Filed 9/1/16  P. v. Williams CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

EDWIN ALDO WILLIAMS,

     Defendant and Appellant.

E063033

(Super.Ct.No. FVI1401190)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Edwin Aldo Williams appeals after he was convicted of driving under the influence of alcohol (DUI) and driving with a blood-alcohol content of 0.08 percent or higher (0.33 percent, in this case). (Veh. Code, § 23152, subds. (a), (b).) He contends that the trial court abused its discretion in declining to dismiss his strike prior and instead sentencing him to a doubled prison term as a second striker. We affirm.

FACTS AND PROCEDURAL HISTORY

On May 13, 2012, about 7:15 p.m., several persons made reports to the police that a red pickup truck tried to run down people in Village Park in Victorville, California. Deputy Max Kunzman was on patrol near the park and heard the reports describing the red truck. Deputy Kunzman proceeded to Eto Camino Road and turned westbound. Eto Camino Road bordered Village Park to the south. Ahead, Deputy Kunzman noticed defendant's truck because it was a burnt orange color, which was similar to the description of the red truck.

Deputy Kunzman saw that defendant's rear license plate was missing and initiated a traffic stop. Defendant turned from Eto Camino Road onto Condor Road, which also bordered Village Park. Defendant stopped along the right shoulder on Condor Road, next to the park. Defendant provided his driver's license on request. Defendant slurred his speech when speaking with Deputy Kunzman, so the deputy had defendant step out of the car. Defendant smelled of alcohol, and he had to hold onto the side of the truck bed for balance as he walked toward the rear of the truck.

Defendant refused sobriety tests. He insisted that he had not been drinking and had done nothing wrong. The deputy arrested defendant. At the sheriff's station,

2

defendant submitted to a blood test. The result showed that defendant had a 0.33 percent blood-alcohol level. Defendant would have been extremely impaired, both mentally and physically, with that blood-alcohol percentage.

As a result, defendant was charged with one count of DUI and one count of driving with a blood-alcohol content over 0.08 percent. (Veh. Code, § 23152, subds. (a), (b).) The offenses were charged as felonies because defendant had three prior misdemeanor drunk driving convictions within the previous 10 years. In fact, defendant was on probation for three previous misdemeanor drunk driving offenses at the time he committed the present crimes. The information also alleged that defendant had a felony strike prior (a robbery conviction in 2000). (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)

The court bifurcated trial on the prior felony strike allegation. The jury found defendant guilty as charged on both substantive offenses. The court conducted a trial on the prior conviction allegation and found it true that defendant had suffered a strike prior.

Defendant asked the trial court to exercise its discretion to dismiss his prior strike. (Pen. Code, § 1385; see *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).) The court declined to dismiss the strike and sentenced defendant to the aggravated term of three years in state prison, doubled to six years as a second strike, on count 1. The court stayed the sentence on count 2, pursuant to Penal Code section 654.

Defendant filed a notice of appeal. He raises a single contention on appeal: The trial court abused its discretion in declining to dismiss his strike prior.

3

<u>ANALYSIS</u>

I.

*STANDARD OF REVIEW*

The trial court is vested with discretion, albeit limited discretion, to dismiss a strike prior allegation "in furtherance of justice," pursuant to Penal Code section 1385, subdivision (a). (See *Romero*, *supra*, 13 Cal.4th 497, 530.) Accordingly, the appropriate standard of review of a trial court's ruling declining to dismiss a strike is a deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.)

We now apply that standard to the present circumstances.

II

*THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO DISMISS DEFENDANT'S STRIKE PRIOR*

A.      <u>The Trial Court Considered the Appropriate Factors</u>

A trial court, in exercising its discretion whether to dismiss a strike prior, must consider whether, "in light of the nature and circumstances of [a defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

4

Here, the trial court did consider the relevant factors and concluded that defendant did not fall outside the spirit of the Three Strikes law; the court therefore refused to dismiss defendant's strike prior.

B.      The Relevant Factors Have Not Been Altered by Other Statutory Reforms to Sentencing, and Such Reforms Are Inapplicable in Defendant's Case

Defendant appears to argue, however, that the "spirit" of the Three Strikes law has been altered by recent statutory reforms. Defendant emphasizes that the finding of an abuse of discretion is not limited to rulings that are irrational, whimsical, arbitrary, or capricious. (Citing *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) Rather, the discretion to be exercised is " ' "a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citations.]" ' " (*Ibid*.) The point of defendant's emphasis is to suggest that recent amendments to the criminal law, resulting in more lenient sentences in some categories of cases, have created "an entirely different sentencing landscape, reflecting a radical change in the spirit of the law." He argues that recent reforms have created "seismic changes in the sentencing landscape in California," such that the appropriate proportionality of a sentence, as applied to any given offender, has been significantly lowered.

Defendant points to the Three Strikes Reform Act of 2012 (Proposition 36), passed by the voters on November 6, 2012. Proposition 36 generally provides that a third strike sentence (25 years to life, in most cases) may be imposed only if the third strike is a serious or violent felony. (See Pen. Code, § 1170.126.) He also refers to the Criminal

Justice Realignment Act of 2011. (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 15, § 1.) Under the Realignment Act, numerous offenses previously punishable by specified terms in state prison are now punishable by serving that same term in local custody in a county jail. In addition, the term may be divided between confinement in a county jail and a period of supervised community release. (The Postrelease Community Supervision Act of 2011 [§ 3450 et seq.], was adopted as part of the 2011 Realignment Act; see Pen. Code, §§ 1203.2, subd. (b)(l), 3451, subd. (a), 3453, 3454, subd. (b), 3455, 3458.) Indeed, an amendment to the Realignment Act in 2015 now requires the default realignment sentence to be served partly in local custody and partly on release under mandatory supervision, unless the sentencing court can make a finding that the "interest[s] of justice" require custodial service of the entire term. (See Pen. Code, § 1170, subd. (h)(5).) Finally, defendant further relies on the Safe Neighborhoods and Schools Act (Pen. Code, § 1170.18, subd. (b); Proposition 47), which prospectively reduces certain felonies (mostly theft- or drug-related charges) to misdemeanors and creates two separate mechanisms for reclassifying felony convictions as misdemeanors, depending on whether the defendant is currently serving a sentence for an eligible felony conviction or has completed his or her sentence.

In the tea leaves of these various enactments, defendant divines a legislative intention to drastically reform sentencing norms away from punishment and toward rehabilitation. He suggests that the statutory reforms make increased sentences for repeat offenders an "out-dated justification for harsh sentencing." He contends that, "[n]ow the 'spirit of the law' must be interpreted in light of sentencing changes, rejecting the

6

simplistic and disproven notion, that locking people up longer deters recidivism, and makes us safer."

Defendant cannot claim, however, that the statutory changes he points to have any application to him. The requirement that a third strike life sentence be based upon a serious or violent third strike felony is inapplicable to defendant, who was sentenced as a second striker. For third strikes that are not serious or violent felonies, the Three Strikes Reform Act leaves second strike doubled sentences intact. The Three Strikes Reform Act did nothing to alter second strike sentences. Defendant admits that the explicit purpose of the Three Strikes law is to ensure longer prison terms for recidivists—those previously convicted of serious or violent (strike) felonies—and that that stated purpose remains in place. As to the Realignment Act, defendant also knows that he is ineligible for a local custody or split sentence because of his prior strike. (Pen. Code, § 1170, subd. (h).) Defendant's current offense is a felony. It could have been charged as either a felony or a misdemeanor (also known as a "wobbler"). However, it was charged as a felony and remains a felony, despite Proposition 47 and its conversion of certain kinds of less serious theft and substance abuse cases to misdemeanors. Defendant's crime is not an offense that has been statutorily reduced to a misdemeanor. Notably, defendant himself never applied in the trial court to have his current offense designated a misdemeanor. (Pen. Code, § 17, subd. (b).) In short, defendant's claimed "seismic changes" in sentencing apply only to crimes unlike his and to people unlike himself.

7

C.      Defendant's Sentence as a Second Striker Is Not Disproportionate to His Culpability

Defendant argues that the common thread of the sentencing reforms, as well as existing *Romero* case law and constitutional considerations, is to ensure that whatever punishment is imposed is properly proportional to the offense and the offender.  (Citing Cal. Const., art. I, § 17; see *In re Lynch* (1972) 8 Cal.3d 410, 425-427.)  He contends that his present second strike sentence (i.e., based upon the failure to dismiss the strike conviction) is disproportionate to his offense and his personal circumstances and characteristics.  First, the offense is a "wobbler" and so *could* have been charged as a misdemeanor.  Second, he is an "ill older man."  Third, the trial court, in declining to dismiss the strike, improperly relied on speculative hearsay, to the effect that defendant was or must have been the individual reported by bystanders for threatening behavior in the park.  Fourth, the doubled term for a second striker, before the Three Strikes Reform Act, "was the 'soft option' before the enactment of [Penal Code section] 1170.126.  Now for those with a current nonviolent offense, it is the maximum."

We consider defendant's points, but we do not find them persuasive.

1.      *Defendant's "Wobbler" Offense Was Charged as, and Remains, a Felony for All Purposes*

As to the first point, it is true that defendant's current offense was a wobbler.  But, as previously noted, it was explicitly charged as a felony and a felony sentence was imposed.  (This was likely because of the seriousness of defendant's current offense, his

8

recent string of almost annual misdemeanor drunk driving convictions [defendant admits in his briefing that his repeated convictions within the past 10 years were a reason for the felony charges], and his prior poor performance on parole and probation.) " ' "A wobbler offense charged as a felony is regarded as a felony for all purposes until imposition of sentence or judgment. [Citations.] If state prison is imposed, the offense remains a felony; if a misdemeanor sentence is imposed, the offense is thereafter deemed a misdemeanor. [Citations.]" ' " (*People v. Tran* (2015) 242 Cal.App.4th 877, 885.) It is of no moment that defendant's offenses *could* have been charged as misdemeanors. Instead, they were and remain felonies.

2.     *Defendant's Age and Medical Conditions Did Not Warrant Dismissal of the Strike Allegation*

As to the second point, defendant appended a declaration to his request to dismiss the strike; the declaration averred defendant's age (55 years old) and described various medical conditions he had. For example, he suffered from apnea, a 10-year-old back injury, and a recent broken leg, which had left him confined to a wheelchair during most of his pretrial incarceration. However, as defendant himself acknowledged, the chief component of defendant's illness, disease, or disability was his untreated alcoholism. Defendant averred: "I began drinking when I was twelve years old. My problems with alcohol have only gotten progressively worse. I have never received any treatment for that problem. I probably bear some responsibility for this lack of treatment. I have little doubt that further medical treatment is going to be necessary as my liver continues to deteriorate."

9

That defendant "probably" bore "some responsibility" for his failure to seek any treatment for his alcoholism was an understatement. No amount of prior consequences had yet convinced defendant to seek actual treatment for his disease. Defendant was largely, if not wholly, responsible for his health issues, and he failed to show extraordinary circumstances to justify disparate treatment on account of those issues. "[D]rug addiction [or alcoholism] is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511.)

The instant case is one in which defendant's medical condition of alcoholism cannot be regarded as a mitigating factor. Defendant has waited until after conviction and the serious prospect of incarceration to, for the first time, admit that his continued drinking has severely damaged his health (liver). Even under the impending severity of his situation, the best that defendant could say was that, if he were granted leniency yet again, he would "never have another drink for the rest of [his] life," and—an equally dubious assurance—that he "*plan*[*ned*] on being pro-active in maintaining sobriety." (Italics added.) Defendant had absolutely nothing concrete to offer in mitigation of the most obvious factor in his repeated criminal behavior.

3.     *The Trial Court Was Permitted to Take Hearsay in the Probation Report into Account and Did Not Rely Primarily on the Hearsay Matters*

As to the third point, the trial court did recite matters from the probation report, to the effect that defendant may well have been the man who harassed some people in the park and then drove recklessly when leaving. Defendant objects that the remarks in the

10

probation report, repeated by the trial court at sentencing, were pure speculation; the trial

court impermissibly relied on such unproven speculations in declining to dismiss

defendant's strike prior.[1]

**a.       The trial court properly considered the hearsay statements in the**

**probation report**

In considering whether or not to make certain sentencing choices in the first

instance, a trial court may properly refer to hearsay matters within a probation report.

"Superior courts consider and rely upon hearsay statements contained in a presentence

report to determine whether to place a defendant on probation, and to evaluate his [or her]

---

[1] The probation officer reported that a sheriff's deputy "subsequently interviewed a witness regarding what she observed.  She stated she and her family were at the park for a Mother's Day barbecue when the defendant arrived.  He began making lewd gestures with a beer bottle toward several 15-year-old girls.  He continued making lewd comments and told one of the girls she had 'nice boobs.'  Several people confronted the defendant, and he became angry when someone called him a 'pervert.'  He was asked to leave the park, and when he got into his vehicle, he peeled out of the parking lot.  He began driving recklessly back and forth, and drove over the curb onto the grass area, before he left the park driving eastbound on El Camino. . . .  [Defendant] sped down the residential street at approximately 60 miles per hour, nearly hitting several children.  He sped to the end of the roadway, spun his tires, and continued driving recklessly westbound on Cazadero Road toward Village Drive."
A second witness gave a similar account:  "While attending the barbecue, [defendant] got angry and left in his truck driving recklessly.  He began doing donuts in the paved parking lot, jumped the curb into the grass area, and sped back and forth, nearly hitting the witness' vehicle.  The defendant then sped to the end of the roadway and proceeded westbound on Cazadero Road at approximately 60 miles per hour."
The implication of the statements was that defendant was an attendee of the barbecue, and was therefore known to the witnesses.  The witnesses identified him as the man who drove recklessly from the park shortly before he was stopped.  These accounts were, however, hearsay statements when given to the investigating officer, and as repeated in the probation report.

11

level of culpability when selecting an appropriate sentence. (Pen. Code, § 1203, subd. (b)(3); Cal. Rules of Court, rule 4.411(d).) This includes the court's assessment of aggravating and mitigating factors, such as whether the crime involved great bodily harm or other act[s] disclosing a high degree of viciousness, cruelty, or callousness, whether the victim was particularly vulnerable, whether the crime was carried out with sophistication, whether the defendant took advantage of a position of trust or confidence, whether the defendant played a minor role in the crime, whether the victim participated in the incident and, if so, under what circumstances, and whether the defendant exercised caution to avoid harm or damage. (Rules 4.420(b), 4.421(a)(1), (3), (8), (11), 4.423(a)(1), (2), (6).)

"Thus, courts routinely rely upon hearsay statements contained in probation reports to make factual findings concerning the details of the crime. These findings, in turn, guide the court's sentencing decision . . . . As one Court of Appeal has stated, 'In every felony proceeding in the State of California, a probation report is required and must be read and considered by the sentencing judge. [Citation.] The Legislature does not require trial court judges to read and consider "unreliable" documents as a prerequisite to the imposition of sentence.' (*People v. Miller* (1994) 25 Cal.App.4th 913, 918 [31 Cal.Rptr.2d 423].)" (*People v. Otto* (2001) 26 Cal.4th 200, 212-213.)

Trial defense counsel asked the court to refrain from considering any matters not adduced in the trial evidence, referring specifically to the events alleged to have taken place in the park. On appeal, defendant argues that the events described in the police report, and repeated in the probation report, were "absurd and unproven." He asserts that

12

the statements were "unreliable hearsay," and urges that "sentencing factors must also be rationally based upon preponderant evidence," but that the police report and probation report evidence did not meet that standard. Defendant points out that he was not charged with any crime relating to making lewd remarks, or to dangerous driving, or to trying to strike pedestrians with his vehicle: "There were no such charges arising out of this incident, so if there was any credible or trustworthy report of these uncharged crimes, it would have appeared somewhere, as something the prosecutor espoused, as trustworthy hearsay."

We disagree with defendant's implication. To begin with, there was nothing inherently absurd about the initial reports to law enforcement, or the witnesses' subsequent statements made to the police during the investigation. The matters contained within the hearsay statements include indicia of reliability: the witnesses appeared to know the identity of the person behaving erratically and driving dangerously. He appeared to have been an invitee to the social gathering (Mother's Day barbecue) at the park. At the preliminary hearing, Deputy Kunzman testified that the witnesses' reports from the park identified the man driving erratically by the nickname, "Texas." In defendant's papers requesting a *Romero* review, defense counsel asserted that the "probation report reflects 'facts' of what allegedly happened at a park before [defendant] was stopped. There is total disagreement between [defendant] and the version of events from those people, as their stories are related in both the police and probation reports." The request to dismiss defendant's strike prior did not, however, contain anything further to indicate any such disagreement. Defendant provided a personal declaration in

13

connection with his *Romero* request. Nowhere in his declaration did defendant deny, or even address, the incidents at the park which led to the police dispatch broadcast. Defendant never denied being at the park, being the person who was driving recklessly at the park, or having the nickname, "Texas." In his personal declaration, defendant did include the statement that he wished to "move back to Texas" to be with his children and grandchildren. He thus had a significant connection to Texas, as might be expected of someone nicknamed, "Texas."

When defendant was interviewed by the probation department in preparation of the sentencing report, he "made no statement with regard to what happened on the day of the offense, other than to state the people in the park are not his family." He did not deny being at the park, driving recklessly, knowing the people at the park, or having the nickname, "Texas." Instead, he told the probation officer that, "[h]e is actually a resident of Texas, but he ha[d] been traveling back and forth between California and Texas every few months to obtain medical treatment. He want[ed] to return to Texas to be with his grandchildren."

There was nothing about the witnesses' statements, as repeated in the probation report, that was inconsistent, or improbable, such that they should be deemed inherently untrustworthy.

In addition, the failure to bring a specific charge after an investigation does not mean that statements made by witnesses during the investigation are untrustworthy or false. The charging authority lies with the prosecutor, not with the courts. (*People v. Birks* (1998) 19 Cal.4th 108, 134.) "A court should not second-guess the prosecution's

14

decision regarding whether sufficient evidence exists to warrant bringing charges." (*People v. Nelson* (2008) 43 Cal.4th 1242, 1256.) Just because no charges have been filed against defendant arising from the alleged incidents at the park, does not mean that the statements alleging the uncharged conduct are automatically untrustworthy. As previously noted, the trial court is not precluded from considering uncharged conduct or hearsay statements contained in the probation report when it is making its sentencing determinations. (*People v. Otto*, *supra*, 26 Cal.4th 200, 212-213.)

**b.     Even if the trial court improperly considered the hearsay statements in the probation report, any error was harmless because the court had sufficient independent justification to deny the request to dismiss defendant's strike prior**

The trial court did repeat the gist of the witnesses' stories about the man driving dangerously in the park, but any error in its recitation of the hearsay statements was harmless. If the hearsay statements had been absent from the probation report, the trial court still had ample and controlling reasons to refuse to dismiss defendant's strike prior. (See *People v. Santana* (1982) 134 Cal.App.3d 773, 784 [even though the trial court considered improper arrest data when selecting the aggravated term for sentencing, any error was harmless because the trial court also articulated several additional valid reasons].)

According to defendant's probation report, defendant had a fairly extensive criminal history dating back over 30 years to 1981. That year, he was convicted of auto theft in Texas and sentenced to four years' imprisonment. He was paroled and eventually discharged in 1987. In 1990, just three years after his discharge, defendant was convicted

15

in California of being a felon in possession of a firearm and was sentenced to 16 months in state prison. Four months later, in August 1990, defendant was convicted of possession of a controlled substance. He received another 16-month state prison sentence, to run concurrent with his firearm possession conviction. In 1993, defendant was convicted of felony taking and driving a motor vehicle, granted probation for 12 months, conditioned on serving 365 days in county jail, and ordered to pay restitution. In April 1996, defendant was convicted of misdemeanor corporal injury to a spouse or cohabitant. On that occasion, he was granted probation for 36 months, with an order to serve 27 days in county jail. About a month later, in May 1996, defendant was convicted of felony assault with a deadly weapon, other than a firearm. He was sentenced to three years in state prison.

Defendant continued to offend into the 2000's. In July 2000, defendant was convicted of robbery and sentenced to four years in state prison. In 2006, defendant was convicted of misdemeanor driving without a license and received a probationary term of 36 months, with the requirement that he serve two days in county jail. In November 2009, defendant was charged with misdemeanor drunk driving and eventually convicted in April 2012. He received a probationary term of 36 months, plus a fine and 180 days in county jail, to run concurrent with another 2012 conviction. Also in November 2009, defendant was convicted in Utah of DUI and sentenced to 60 days in county jail, plus a fine. About four months later, in March 2010, defendant was charged with another misdemeanor offense in Utah, bypassing an ignition lock device and obstructing a court order. He was convicted and fined in April 2010. Back in California, defendant was

16

charged with another misdemeanor DUI offense in June 2010 and convicted in April 2012. He was given a probationary term of 36 months, including serving 180 days in county jail. In October 2010, defendant was charged with yet another misdemeanor DUI offense in California. He was convicted in April 2012 and admitted a prior strike. He was sentenced to 36 months' probation (to be served concurrent with the sentences on his offenses of June 2010 and Nov. 2009), fined, and ordered to serve 180 days in county jail and complete a "multiple offender" program.

After this lengthy history, defendant committed the instant felony offense in May 2012, just a month after embarking on the concurrent probationary terms he had been granted for his three most recent prior California misdemeanor drunk driving offenses.

Manifestly, defendant was a repeat offender, who did not learn from multiple opportunities to reform himself. More lenient treatment was insufficient to stop him from committing more and more serious offenses. He performed poorly on parole and probation and had numerous violations. He had no insight into his problems and had taken no steps to remediate them. Defendant was exactly the kind of repeat offender for whom the Three Strikes law was devised. In this context, the trial court's remarks (repeating the witnesses' hearsay statements that defendant may have been angry and driving recklessly while extremely intoxicated) did not affect the key assessment. The court did not "rely on" the "lurid hearsay" to "deny[] him otherwise appropriate sentencing relief." Dismissing defendant's strike prior was not "otherwise appropriate." Defendant was appropriately treated as a second strike offender, based on his record, his

17

personal characteristics, his prospects, and the nature of the present offense.  The trial court properly denied defendant's request to dismiss his strike prior, regardless of any remarks about the hearsay statements in the probation report.

<u>DISPOSITION</u>

The trial court did not abuse its discretion in declining to dismiss defendant's strike prior.  The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>McKINSTER</u>
Acting P. J.

We concur:

<u>MILLER</u>
J.

<u>SLOUGH</u>
J.