Filed 7/17/13  P. v. Hernandez CA26
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>RODRIGO HERNANDEZ,<br><br>  Defendant and Appellant. | 2d Crim. No. B246371<br>(Super. Ct. No. F481947)<br>(San Luis Obispo County) |

Rodrigo Hernandez appeals from an order committing him to the State Department of State Hospitals (formerly Department of Mental Health) for treatment as a mentally disordered offender (MDO).  (Pen. Code, § 2962.)[1]  Appellant contends that the evidence does not support the finding that he received 90 days of treatment within the year prior to his parole or release.  (§ 2962, subd. (c)).  We affirm.

*Facts and Procedural History*

On August 27, 2011, appellant was convicted of assault with a deadly weapon on an officer and sentenced to state prison.  (§ 245, subd. (a)(1))  A year later, the Board of Parole Hearings (BPH) determined that appellant was an MDO.  Appellant filed

---

[1] All statutory references are to the Penal Code unless otherwise stated.  Under the MDO Act, six criteria must be met to commit a prisoner as an MDO.  (§ 2962, subds. (a)-(d)(1).)  One of those criteria is that the prisoner must have been "in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release."  (§ 2962, subd. (c).)

1

a superior court petition challenging the MDO determination and waived jury trial. (§ 2966, subd. (b).)

Doctor Kevin Perry testified that appellant suffered from a severe mental disorder, schizophrenia, paranoid type, manifested by persecutorial delusions, auditory hallucinations, and paranoid beliefs that the FBI controlled him and people were poisoning his food. Appellant had a long history of mental health problems dating back to 1984 when he was admitted to Metropolitan State Hospital. From 1986 through 1993, he was treated at Patton State Hospital.

Doctor Perry opined that appellant met all the MDO criteria, that the mental disorder was not in remission, and that appellant posed a substantial danger to others as evidenced by appellant's violent history and threats to kill his psychiatrist and hospital staff.

*90 Days Treatment*

Appellant contends that the trial court erred in accepting Doctor Perry's opinion testimony that appellant received 90 days of treatment. (§ 2962, subd. (c).) It is settled that a mental health expert may render an opinion based on reliable hearsay of the type reasonably relied upon by mental health professionals. (*People v. Miller* (1994) 25 Cal.App.4th 913, 917-918 [probation report]; *People v. Cooper* (2007) 148 Cal.App.4th 731, 746-747 [videotaped statements].) "The hearsay relied upon by an expert in forming his or her opinion is 'examined to assess the weight of the expert's opinion,' not the validity of [it's] contents. [Citation.]" (*Id*., at p. 747.)

Appellant argues that the 90-day-treatment determination is purely a factual question and does not require expert testimony. Doctor Perry's opinion testimony was based in part on appellant's admission in a face-to-face interview. Appellant stated that he received antipsychotic and antidepressant medication at Los Angeles County Jail for more than 90 days before he was transferred to state prison. Appellant asserts that his admission is not credible because he suffers from a mental disorder. We reject the

2

argument because the reliability of appellant's oral history was part of Doctor Perry's task in making the MDO evaluation. (§ 2962, subds. (b)(1) & (d)(3).)

Before the BPH hearing, appellant told another MDO evaluator (Doctor Robert Sargent) that he received treatment for the mental disorder at the Los Angeles County Jail. Doctor Perry testified that appellant "confirmed that, and he told me he was prescribed an antipsychotic medication and an antidepressant medication beginning in December 2011. [¶] He remained in that mental health program in jail, by his report and by the prior mental health evaluation, until he was put in prison on June 13, 2012. I then reviewed prison records that covered June 13th, 2012 through July 17th of 2012. He was prescribed antipsychotic medication during that time as well. Then on the 19th of July, 2012, [appellant] was transferred to the California Medical Facility in Vacaville, . . . and he remained there until August 20, 2012. So I had evidence of basically 11 months of treatment for a psychiatric disorder during the year before his parole"

When Doctor Perry interviewed appellant, appellant identified the medication by name (Seroquel and Paxil) and the dates he took the medication while in jail. Doctor Perry confirmed that the medications are commonly given to patients suffering from schizophrenia and consistent with the treatment regimen appellant received at Atascadero State Hospital (ASH) for the mental disorder.

Appellant's trial attorney argued that "Doctor Perry didn't look at [jail] records that say he did get treatment." The trial court rejected the argument because appellant was symptomatic and "they wouldn't just let him sit there month after month and not treat him."[2] Appellant "was able to pinpoint dates when he took the medication, and Dr. Perry said he accepted those statements because it makes treatment sense to use these drugs for [appellant's] affliction. They were different drugs than those [appellant] was prescribed at ASH, so it would have to be an incredible coincidence he happened to

---

[2] Appellant was seeing a psychiatrist and symptomatic the day he committed the assault. The police described appellant's speech as "unintelligible" and requested a mental health evaluation.

3

pick the right drugs to say that these are the drugs he received.  The facts are that his symptoms are florid sometimes even if he takes his medication, so it makes sense that L.A. County Jail, who had him for that nine-month period, would have to have offered him drugs or he would be out of control. [¶]  So that's Dr. Perry's opinion, and that's what I'm accepting it for on the 90 days or more [of treatment]."

We review for substantial evidence, drawing all reasonable inferences and resolving all conflicts in favor of the judgment.  (*People v. Miller, supra,* 25 Cal.App.4th at p. 919.)  It is the exclusive province of the trial judge to determine the credibility of a witness and the truth or falsity of the facts on which the MDO determination depends. (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082- 1083.)

Citing dicta in *People v. Baker* (2012) 204 Cal.App.4th 1234, appellant asserts that a mental health expert cannot render an opinion that the 90-day-treatment criteria was satisfied.[3]  Appellant argues that the 90-day-treatment criteria is a "factual inquiry" which renders expert opinion testimony inadmissible as a matter of law.  The MDO Act, however, requires that a psychiatrist or psychologist evaluate a prisoner and certify that the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day. (§ 2962, subds. (d)(1)-(d)(3); *People v. Achrem*  (2013) 213 Cal.App.4th 153, 158-159.)  Such an evaluation and certification is required before the Board of Parole Hearings determines the prisoner is an MDO.

Section 2966, subdivision (b) provides that, in a civil action challenging the MDO determination, the parties may upon stipulation, "receive in evidence the affidavit or declaration of any psychiatrist, psychologist, or other professional person who was involved in the certification and hearing process, or any professional person involved in the evaluation or treatment of the petitioner during the certification process."  Assuming a

---

[3] We rejected a similar argument in *People v. Stevens* (2013) 213 Cal.App.4th 1401. Petition for review was granted June 12, 2013. (S209643.)

4

party does not enter into such a stipulation, the inference is that mental health professional may testify and offer the same expert opinion.

To say that the 90-day-treatment criteria is a "factual issue" beyond the expertise of a mental health professional assumes the medical records are the best evidence. The secondary evidence rule, like the former "best evidence rule" applies only to evidence offered to prove the content of a writing, not evidence offered to prove some other fact. (See Evid. Code, §§ 1522-1523; see e.g., *Crail v. Blakley* (1973) 8 Cal.3d 744, 755.) An MDO evaluation is not a mere recitation of medical records but a mental health evaluation to determine whether treatment was provided and for how long. Doctor Perry's testimony was based on his review of the medical records and a face-to-face interview in which appellant described the treatment received in jail. Even under a "best evidence" analysis, appellant's admission supports the finding that the 90-day-treatment criteria was satisfied. The admission was corroborated by Doctor Sargent who also questioned appellant about the treatment received in jail.

*Jail Medical Records*

Appellant complains that the jail medical records were not produced to show that he received treatment before he was transferred to prison. Although section 2981 provides that a trier of fact may consider jail mental health records, it is not the exclusive means of establishing treatment within the meaning of the MDO Act.[4] The trial court credited Doctor Perry's expert opinion testimony because the doctor made an independent evaluation "based on the statements of this patient. He did not decide that the patient was unreliable. . ."

Mental health professionals commonly rely on a patient's oral history in diagnosing, evaluating, and forming an opinion about a patient's mental state and

---

[4] Section 2981 provides: "For the purpose of proving the fact that a prisoner has received 90 days or more of treatment within the year prior to the prisoner's parole or release, the records or copies of records of any state penitentiary, county jail, federal penitentiary, or state hospital in which the person has been confined, when the records of copies thereof have been certified by the official custodian of those records, may be admitted as evidence."

5

treatment. (*People v. Campos, supra,* 32 Cal.App.4th at pp. 307-308.) "So long as the threshold requirement of reliability is satisfied, even matter that is ordinarily *inadmissible* can form the proper basis for an expert's opinion testimony. [Citations.] " (*People v. Gardeley* (1996) 14 Cal.4th 605, 618.) Appellant stipulated that Doctor Perry was a qualified expert and is estopped from arguing that the doctor's opinion testimony is not substantial evidence. (*People v. Miller*, *supra,* 25 Cal.App.4th at p. 917.)

*Harmless Error*

Appellant argues that the use of expert opinion testimony to show the 90-day-treatment criteria was satisfied violates his due process rights. Appellant forfeited the issue by not objecting on hearsay or due process grounds. (*People v. Tafoya* (2007) 42 Cal.4th 147, 166.) On the merits, the alleged error is harmless. (*People v. Campos, supra,* 32 Cal.App.4th at pp. 308-309.) It is uncontroverted that appellant was not treatment compliant and subject to an involuntary medication order. (See *Keyhea v. Rushen* (1986) 178 Cal.App.3d 526, 542*; In re Qawi* (2004) 32 Cal.4th 1, 27.) MDOs who refuse treatment may not claim that 90-day treatment element for a MDO commitment must be proven. (*People v. Kirkland* (1994) 24 Cal.App.4th 891, 908-909.)

The judgment (MDO commitment order) is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

Barry T. LaBarbara, Judge

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.