Filed 2/2/24  P. v. Gordon CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098892 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE008926) |
| v. | |
| FRED GORDON, | |
| Defendant and Appellant. | |

Defendant Fred Gordon was convicted on three felony counts related to discharging and possessing a firearm and sentenced to 11 years in prison, consisting of the upper term of three years, doubled to six years under the "Three Strikes" law because of a prior robbery conviction, and a five-year enhancement pursuant to Penal Code section 667, subdivision (a).[1]  He argues the trial court should have sentenced him to the

---

[1]     Further undesignated statutory references are to the Penal Code.

1

low term (or at most the middle term) rather than the upper term and abused its discretion in not striking the five-year enhancement. We find no error and thus affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We need not recount the facts underlying defendant's convictions, as they are unnecessary to the disposition of this appeal. It is sufficient to note he made videos of himself riding in the passenger seat of a car, brandishing a handgun, and holding his right arm outside the car while shooting the gun.

A jury found defendant guilty on three felony counts: (1) discharge of a firearm in a grossly negligent manner (§ 246.3); (2) discharge of a firearm from a motor vehicle (§ 26100, subd. (d)); and (3) felon in possession of a firearm (§ 29800, subd. (a)(1)). As to the first count, the jury also found defendant was personally armed with a firearm in the commission of the offense, which made it a serious felony. It was also alleged that defendant was previously convicted of robbery (which is a serious and violent felony), and, based on a certified copy of the record of conviction, the trial court found the prior conviction was true.[2] The trial court initially sentenced defendant to a total of 12 years four months. Defendant appealed, and in a prior unpublished opinion, we affirmed the conviction but remanded the case for a full resentencing in light of changes made by Senate Bill No. 567 (2021-2022 Reg. Sess.). (*People v. Gordon* (Dec. 15, 2022, C094720).)

On remand, defendant argued the court should strike the strike (i.e., a *Romero* motion),[3] and dismiss the five-year serious felony enhancement. He also argued the lower term was "mandated" by section 1170, subdivision (b)(6) because he was a youth (i.e., under 26) and had experienced childhood trauma (his mother suffered from

---

**2**     The People's request that we judicially notice the record from defendant's previous appeal (case No. C094720) is granted.

**3**     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

2

addiction and mental health issues, his father was in prison for most of his life, and he suffered neglect and possibly sexual abuse). He acknowledged his adult criminal history included a prior robbery conviction for which he was sentenced to two years in prison, and his juvenile criminal history included "low level offenses" for battery, marijuana possession, weapon possession, and theft, but he argued several mitigating factors (in addition to his youth and childhood trauma) were present and weighed greatly in favor of dismissing the enhancement.

The People argued the court should not strike the strike or dismiss the five-year enhancement and should impose the upper term. It attached certified copies of defendant's California Law Enforcement Telecommunications System (CLETS) "rap sheet" and "969b prison packet," which show the following juvenile criminal history (in addition to the 2017 robbery conviction): (1) December 2011, battery; (2) September 2012, possession of marijuana; (3) February 2013, possession of a weapon at school; (4) May 2013, receiving stolen property; and (5) July 2013, vehicle theft. The certified copies show that, throughout this time period, defendant was a ward of the court, frequently on informal and formal probation, and spent over a month in juvenile hall, and he was still a ward of the court in 2017 when he pled guilty to the robbery charge.

At the resentencing hearing, the trial court admitted the certified copies of defendant's rap sheet and section 969b packet into evidence. Based on these documents, the trial court found the following aggravating circumstances were true beyond a reasonable doubt: (1) defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings were numerous or of increasing seriousness; (2) he served a prior prison term; (3) he was on parole when the current offense was committed; and (4) his prior performance on parole was unsatisfactory. It also found there were several mitigating circumstances present, including that defendant was a juvenile when the robbery was committed, he was currently under 26, and the current offense was not a violent felony, and it stated it would assume for purposes of sentencing that defendant

3

suffered childhood trauma that contributed to the current offense. It also noted the prior robbery conviction was now more than five years old (although it was less than five years old at the time of the original sentencing hearing). The court acknowledged these mitigating factors both weighed greatly in favor of dismissing the enhancement pursuant to section 1385 and gave rise to a presumption that the lower term should be imposed pursuant to section 1170. However, the court found dismissing the five-year enhancement would endanger public safety because there was a "very high likelihood" that dismissing it would result in "physical injury or serious danger to others." In so finding, the court noted defendant's criminal history dated back to 2011; he had numerous juvenile convictions; he was still a ward of the court when he committed the robbery; the robbery was "fairly aggravated" and may have involved a gun; he spent two years in prison for the robbery; he committed the current offense less than a year after getting out of prison and while still on parole; the current offense had the potential for great bodily injury or death even though nobody was in fact injured; and he had an "abysmal record" while in custody for the current offense and was involved in several fights or altercations in the county jail. The court found this history demonstrated a pattern of "continuous criminality" from 2011 through trial; that defendant had "numerous opportunities" to change his behavior but failed to do so; and the almost inescapable conclusion was that he will hurt somebody when he gets out of prison.[4]

The court then considered whether to impose the low, middle, or upper term. It acknowledged there was "a presumption of low term" because of defendant's youth and his traumatic childhood but stated it could not ignore its concern that "defendant is a danger to society." It acknowledged defendant was young and "got a bad deal in life," but stated it could not ignore that fact that "there are a lot of people who have had bad

---

[4]     It also denied the *Romero* motion and declined to strike the strike. Defendant does not challenge this ruling on appeal.

deals in life who didn't go on to commit crime after crime after crime after crime." It noted the prison term should have "been the biggest wake-up call" of all, but shortly after getting out of prison and while on parole defendant "went out and got a gun" and committed the current offense. It stated, "What I see is somebody who, every time he gets in trouble, you feel bad for it, and then you change your life for a little bit and then you go back and do it again. [¶] . . . I look at your history, and . . . I see somebody who's likely to get out and do it again." It identified the four aggravating factors it found to be true (noted above), and it concluded those aggravating factors outweighed the mitigating factors and it would be contrary to the interests of justice to impose the low term.

The trial court thus sentenced defendant to the upper term of three years on the discharge of a firearm in a grossly negligent manner count, doubled to six years under the Three Strikes law, and to five years for the enhancement under section 667, subdivision (a); it also imposed the middle term doubled for four years for each of the remaining two counts but stayed both sentences pursuant to section 654.

**DISCUSSION**

*1. The Upper Term Sentence*

Citing recent amendments to section 1170, defendant argues the trial court should have imposed the lower term, or, at most, the middle term, rather than the upper term. We see no abuse of discretion in the trial court's decision to impose the upper term.

Effective January 1, 2022, Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) amended section 1170 to provide that where a statute specifies three possible terms, the court may impose the upper term only when justified by aggravating circumstances that are stipulated to by the defendant, proven to a fact finder beyond a reasonable doubt, or established by a certified record of conviction. (§ 1170, subd. (b)(2), (3).) Senate Bill 567 also amended section 1170 to provide the court shall impose

5

the lower term if the defendant's youth (defined as under 26) or childhood trauma contributed to the commission of the offense, unless it finds that the aggravating circumstances outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice. (§§ 1170, subd. (b)(6), 1016.7, subd. (b).) This provision "does not require imposition of the lower term in every case in which the defendant was under age 26 at the time the crime was committed [or experienced childhood trauma]. Rather, this provision establishes a presumption of the lower term if the defendant's youth [or childhood trauma] was 'a contributing factor' in his or her commission of the crime '*unless* the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice . . . .' (§ 1170, subd. (b)(6)(B), italics added.)" (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

We review the trial court's choice of term for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) A trial court may also abuse its discretion if it misunderstood its sentencing discretion or considered impermissible factors in deciding what term to impose. (See

*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490.)  Defendant fails to convince us the trial court abused its discretion in imposing the upper term.

Defendant does not suggest the trial court misunderstood either its sentencing discretion or section 1170.  The trial court clearly understood both.  It acknowledged several times that the low term was presumed because of defendant's youth and childhood trauma unless it found imposing the low term would be contrary to the interests of justice.  It also found four aggravating circumstances were established by the certified records of conviction, and it weighed those circumstances against the mitigating circumstances when deciding what term to impose.  Defendant does not challenge the trial court's findings on the four aggravating circumstances, and he acknowledges it was appropriate for the trial court to consider them when deciding what term to impose.  He argues, however, that "[h]is criminal history, when closely scrutinized, and when weighed against the numerous factors in mitigation, renders imposition of the upper term an abuse of discretion."  The trial court found otherwise, and defendant fails to meet his burden of establishing this was so irrational or arbitrary that no reasonable person could agree with it.

Defendant also briefly argues the trial court considered two additional aggravating circumstances that he did not stipulate to, and that were not found true by the jury or the judge, or established by certified records of conviction, in violation of section 1170, subdivision (b)(2). We disagree.

Defendant first argues the court engaged in "improper fact finding" when it noted the current offense was "serious" because the gun was discharged in a mixed-use area where somebody could have been hit, when, in fact, there was "little if any evidence" the area was mixed use or that anyone was present.  There was nothing improper about the court noting the current offense was serious because the Legislature has decreed that "any felony in which the defendant personally uses a firearm" is a " 'serious felony' " (§ 1192.7, subd. (c)(8)), and the jury found beyond a reasonable doubt that defendant

7

"was personally armed with a firearm" in the commission of the offense. Defendant's current offense is thus classified as a "serious felony" regardless of where it occurred or whether anybody was present. Moreover, the jury found defendant guilty of violating section 246.3, which prohibits the willful discharge of a firearm "in a grossly negligent manner which could result in injury or death to a person." In the words of one court, "section 246.3 presupposes that there are people in harm's way. Since the offense involves gross negligence ' "which could result in injury or death to a person," ' it must appear that the defendant's act 'actually had the potential for culminating in personal injury or death.' [Citation.] . . . [Citation.] . . . [Citation.] . . . [Citations.] Thus, section 246.3 by its terms presumes that there are reasonable grounds to suspect that people will be endangered. If there are isolated places in this populous state where the willful discharge of a firearm posed no reasonably foreseeable threat to human life, then that act in those places would not violate section 246.3." (*People v. Clem* (2000) 78 Cal.App.4th 346, 351-352.) There was thus nothing improper about the trial court noting the current offense had a potential for injury or death.

Defendant also complains the court found he may have used a gun during the robbery, although this was never alleged or proven, and no documents established it. It is true that, when discussing whether to strike the strike or dismiss the five-year enhancement, the court noted, "The robbery was fairly aggravated," and although defendant "didn't plea[d] to a gun," the victim "indicated there was a gun." The court also noted that although "there's no way, really, to . . . prove" now whether defendant used a gun during the robbery, it was still traumatic to the victim. The information on defendant's use of a gun during the robbery came from the probation report, which noted the police report stated the victim said he was robbed at gunpoint and feared defendant was going to shoot him. We agree the trial court could not rely on the probation report to establish "circumstances in aggravation of the crime that justify the imposition" of the upper term, because section 1170 provides the facts underlying such circumstances must

be stipulated to by the defendant, found true beyond a reasonable doubt by the jury or judge, or shown by a certified record of conviction — and the fact that defendant may have used a gun during the robbery was not established by any of these means. (§ 1170, subd. (b)(2), (3).) However, the trial court could properly consider the probation report when deciding whether to strike the strike or dismiss the five-year enhancement. (See *People v. Tran* (2015) 242 Cal.App.4th 877, 888-890 [court may consider probation report when deciding whether to reduce the defendant's sentence]; *People v. Miller* (1994) 25 Cal.App.4th 913, 918 ["In every felony proceeding in the State of California, a probation report is required and must be read and considered by the sentencing judge. (Pen. Code, § 1203, subds. (b), (g))"], disapproved on other grounds in *People v. Stevens* (2015) 62 Cal.4th 325, 336.)

In this case, the trial court noted defendant may have used a gun during the robbery when it was discussing whether to strike the strike or dismiss the five-year enhancement, and *not* when it was discussing whether to impose the lower, middle, or upper term. And again, the trial court stated the only aggravating circumstances it considered when deciding whether to impose the lower, middle, or upper term were the four factors that it found true based on the certified records of conviction, and defendant gives us no reason to doubt this statement. (See, e.g., *People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary"].) Defendant thus fails to convince us the trial court relied on any aggravating circumstances that were not proven as required by section 1170 when deciding whether to impose the upper term.

2. *The Five-year Enhancement*

Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) As amended, section 1385 provides, "In exercising

9

its discretion [to dismiss an enhancement] under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)  Thus, even if mitigating circumstances are present, section 1385 "expressly grants judges discretion to decline to strike enhancements where doing so would endanger public safety."  (*People v. Renteria* (2023) 96 Cal.App.5th 1276, 1285; see also *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 19 [§ 1385 "expressly empower[s] the court to impose [an] enhancement upon a finding that dismissing it would endanger public safety"].)

We review a trial court's decision not to dismiss an enhancement under the deferential abuse of discretion standard.  (*People v. Carmony, supra*, 33 Cal.4th at p. 374.)  Once again, defendant fails to meet his burden of demonstrating the trial court abused its discretion.

Defendant argues at least three of the mitigating circumstances identified in section 1385 are present here:  (1) the current offense is connected to childhood trauma (§ 1385, subd. (c)(2)(E)); (2) the current offense is not a violent felony as defined by section 667.5 (§ 1385, subd. (c)(2)(F)); and (3) defendant was a juvenile when he committed the prior offense that triggers the enhancement (§ 1385, subd. (c)(2)(G)).  The trial court agreed, and stated it considered all of these circumstances when deciding whether to dismiss the enhancement.  It also stressed more than once that it was putting great weight on these mitigating circumstances, as required by section 1385.  Defendant argues the facts underlying his prior conviction and the current offense "do not support the conclusion that he would be a danger to society if the enhancement was stricken."

10

Again, the trial court found otherwise, and defendant fails to convince us this was so irrational or arbitrary that no reasonable person could agree with it.

## DISPOSITION

The sentence is affirmed.

_____/s/_____
EARL, P. J.

We concur:

_____/s/_____
ROBIE, J.

_____/s/_____
MESIWALA, J.