[No. B070157. Second Dist., Div. Six. June 8, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
MARLON MILLER, Defendant and Appellant.

**COUNSEL**

Douglas C. Littlejohn, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Robert Venturi and Anthony Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**YEGAN, J.**—Marlon Miller appeals from the trial court's finding that he is a mentally disordered offender. (MDO, see Pen. Code, § 2960 et seq.) He contends: "I. Doctor Weber's reference to the probation report in concluding appellant's commitment offense involved force or violence violated the

double hearsay rule of Evidence Code section 1201. II. There is no substantial evidence of due certification under Penal Code section 2962, subd. (d)(1) and the judgment must be therefore be reversed. III. Failure to object to reliance on the multiple hearsay probation report does not waive the issue on appeal. IV. Defense counsel failed to act with reasonable competence by failing to proffer a multiple hearsay objection to the probation report."

Doctor Robert Weber, a clinical psychologist at Atascadero State Hospital, testified that appellant suffered from schizophrenia, with episodes of paranoia and uncontrolled anger. Doctor Weber was on the "interdisciplinary treatment team" for ward 18 where appellant was a patient. He relied upon the 1988 probation report and the reports of other mental health experts in concluding that appellant met each and every criterion or element of an MDO determination.

The Los Angeles County probation report for the underlying 1988 robbery conviction, by plea, was received in evidence without objection. This report conclusionally stated that appellant wanted the victim's bicycle. He battered the victim with his fist and then held a knife to his throat causing the victim to surrender the bicycle.

Appellant was sentenced to state prison and paroled in September 1990. However, he was returned to custody in March 1991 after several episodes of bizarre or threatening conduct showing that he suffered from a deteriorating mental state. (See *In re Naito* (1986) 186 Cal.App.3d 1656, 1661 [231 Cal.Rptr. 506].)

Doctor Weber concluded that as of April 28, 1992, the date of the board of prison term certification that appellant was an MDO, he was not in remission but required further inpatient treatment.[1] The reports of Doctors Zil, Kincaid, and Gandhi were contained in the exhibits received without objection. They also made reference to the Los Angeles County probation report. Zil was a chief psychiatrist of the Department of Corrections. Kincaid was a psychologist for the Department of Mental Health. Gandhi was a psychiatrist at the California Medical Facility, Vacaville, where appellant was housed and his report was "based on review of the inmate's central file outpatient health record, and an interview" on March 3, 1992.

---

[1] An MDO trial is directed to whether the prisoner meets the MDO criteria as of the date of the certification. (Pen. Code, § 2966, subd. (b).) This gives notice to the prisoner and allows the parties to concentrate on relevant evidence up to that date. An adverse MDO determination allows inpatient treatment but the Department of Mental Health may, if appropriate, thereafter treat such a person as an outpatient. (Pen. Code, § 2964, subd. (a).) Doctor Weber noted that subsequent to the April 28, 1992, certification, there was a recommendation for outpatient treatment based upon an improved mental status.

We need not reach the merits of appellant's first contention. Appellant did not object to the testimony of Doctor Weber on the basis that he improperly considered the probation report in forming his opinion. He may not raise the issue for the first time on appeal. (Evid. Code, § 353, subd. (a); *People* v. *Green* (1980) 27 Cal.3d 1, 27 [164 Cal.Rptr. 1, 609 P.2d 468]; *People* v. *Pretzer* (1992) 9 Cal.App.4th 1078, 1085 [11 Cal.Rptr.2d 860].)

On the merits, the contention also fails. Whether or not a prisoner is an MDO is the proper subject for expert opinion. Such an opinion necessarily entails an opinion as to each of the criterion or elements thereof. Doctor Weber properly referred to the probation report in concluding that appellant's commitment offense involved "force or violence." (Pen. Code, § 2962, subd. (e).) This did not violate the hearsay rule of Evidence Code. (Evid. Code, § 1200 et seq.)

The premise to appellant's contention is that "[a] probation report is itself hearsay evidence as it constitutes the hearsay statements of the probation officer. To the extent that it relates statements made by others to the probation officer, it constitutes double and sometimes multiple hearsay." (*In re Rose G.* (1976) 57 Cal.App.3d 406, 426 [129 Cal.Rptr. 338]; *In re George G.* (1977) 68 Cal.App.3d 146, 156 [137 Cal.Rptr. 201].)

We hold, in the context of an MDO proceeding, that a qualified mental health professional may refer to and consider the underlying probation report in expressing an opinion that the prisoner is an MDO. This includes the criterion or element that the underlying offense is one involving "force or violence."

"If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] . . . [¶] (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." (Evid Code, § 801, subd. (b).) Thus, an expert need not have personal knowledge of the matter as a prerequisite to testifying about it. The only prerequisite is that the matter considered ". . . is of a type that reasonably may be relied upon by an expert . . . ." (Evid. Code, § 801, subd. (b).)

We conclude that a probation report, albeit hearsay, ". . . is of a type that reasonably may be relied upon by an expert . . . ." (Evid. Code, § 801,

subd. (b).) In every felony proceeding in the State of California, a probation report is required and must be read and considered by the sentencing judge. (Pen. Code, § 1203, subds. (b), (g).) The Legislature does not require trial court judges to read and consider "unreliable" documents as a prerequisite to the imposition of sentence. This report is prepared upon conviction, i.e., either by plea or trial.

Generally speaking, the trial court must make a finding that there is a factual basis for a guilty plea. (*People* v. *Watts* (1977) 67 Cal.App.3d 173, 178-179 [136 Cal.Rptr. 496].) Our trial courts often defer making this determination until the time of sentencing. Then, it is typical for the trial court to rely on the probation report to find a factual basis for the plea. Both at the initial felony sentencing and again in the MDO proceeding, the defendant/prisoner has a due process right to challenge the underlying information in the probation report. Since the report is sufficiently reliable so as to permit the imposition of a state prison sentence, a fortiori, it is sufficiently reliable so as to permit a mental health professional to rely upon it in forming an MDO opinion.

Mr. Witkin indicates that "[w]here the basis of the opinion is unreliable hearsay, the courts will reject it." (1 Witkin, Cal. Evidence (3d ed. 1986) § 482, pp. 452-453.) We agree with Mr. Witkin's restatement of the rule and his analysis of the cases. However, the rule and the cases do not speak to the present situation. In the MDO context, an expert may rely on the probation report because it is not "unreliable."

Appellant relies upon *Kastner* v. *Los Angeles Metropolitan Transit Authority* (1965) 63 Cal.2d 52, 58 [45 Cal.Rptr. 129, 403 P.2d 385], which says: "Opinion evidence based on hearsay is inadmissible." This reliance is misplaced. This case was decided before the enactment of the Evidence Code.

The Evidence Code became operative on January 1, 1967. (Evid. Code, § 12.) The Law Revision Commission's comment to Evidence Code section 801 says: "In regard to some matters of expert opinion, an expert *must*, if he is going to give an opinion that will be helpful to the jury, rely on reports, statements, and other information that might not be admissible evidence. . . . [¶] It is not practical to formulate a detailed statutory rule that lists all of the matters upon which an expert may properly base his opinion, for it would be necessary to prescribe specific rules applicable to each field of expertise. This is clearly impossible; the subjects upon which expert opinion may be received are too numerous to make statutory prescription of applicable rules a feasible venture. It is possible, however, to formulate a general rule that specifies the minimum requisites that must be met in every

case, leaving to the courts the task of determining particular detail within this general framework." (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code, § 801 (1966 ed.) p. 390.)

We agree that the probation report, itself, was hearsay, and not per se admissible at the MDO proceeding. The record, however, shows why defense counsel did not object thereto. ■ His claim of "ineffective counsel" (see, e.g., *People* v. *Pope* (1979) 23 Cal.3d 412, 425-426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]; *People* v. *Pretzer, supra,* 9 Cal.App.4th 1078) must be rejected. Here there was no "failure" to object. There was an "election" not to object. Where the People rely upon the expert to opine that the underlying offense involved "force or violence," without producing an underlying percipient witness, the case is necessarily weaker from an evidentiary point of view. Here, defense counsel utilized the probation report to cross-examine Doctor Weber. He also argued that the brief description of the underlying offense, relied upon by the experts, did not show that a "severe mental disorder" was the cause thereof. (Pen. Code, § 2962, subd. (b).) Thus, the record shows a tactical reason for not objecting to the probation report's receipt into evidence.

■ The contention that the evidence was insufficient to establish that appellant was "evaluated for certification by the person in charge of his treatment" is without merit. It amounts to no more than a request that this court reweigh the evidence and draw an inference not drawn by the trial court, i.e., substitute our judgment for that of the trial court. That is not the function of an appellate court. (*People* v. *Culver* (1973) 10 Cal.3d 542, 548 [111 Cal.Rptr. 183, 516 P.2d 887].)

" 'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' (*People* v. *Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].)" (*People* v. *Ochoa* (1994) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

We hold that the rule restated in *People* v. *Ochoa, supra,* 6 Cal.4th 1199 applies to appellate review of MDO proceedings. (See *People* v. *Collins* (1992) 10 Cal.App.4th 690, 694 [12 Cal.Rptr.2d 768].)

Penal Code section 2962, subdivision (d)(1) requires three evaluations, one by the person in charge of "treating the prisoner," another by a practicing psychologist or psychiatrist from the Department of Mental Health, and another chief psychiatrist for the Department of Health. The trial court impliedly drew the inference that Doctor Gandhi was the person in charge of treatment, with Doctor Kincaid evaluating for the Department of Mental Health and Doctor Zil evaluating for the Department of Corrections.

The order under review is affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied July 6, 1994.