Filed 10/2/25 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| | F088488 |
| In re RICHARD EUGENE GRINDER | (Super. Ct. No. CF01671189-9) |
| On Habeas Corpus. | **ORDER MODIFYING OPINION AND DENYING REHEARING** [No Change in Judgment] |

It is ordered that the opinion filed herein on September 5, 2025, be modified as follows:

1.　　On page 1, footnote 1 is modified to read as follows:

Since January 1, 2020, the statutory scheme has been called "the offenders with mental health disorders (OMHD) law (Pen. Code, § 2960 et seq.)." (*People v. Cannon* (2025) 18 Cal.5th 497, 509; see Stats. 2019, ch. 9, §§ 6–13.)  For purposes of this opinion, we use the terminology in effect when Grinder was initially certified.  Undesignated statutory references are to the Penal Code.

2.　　On page 2, the last paragraph beginning "In addition" is deleted and the following paragraph is inserted in its place.

We assume the claims asserted in Grinder's petition for writ of habeas corpus are timely and reach the merits of those claims.  We adopt a literal interpretation of the catchall provision in subdivision (e)(2)(P) of section 2962 and conclude its requirements are satisfied by the crime of nonforcible oral copulation when the People carry their burden of proving "the prisoner used force or violence" in committing the offense.  (§ 2962, subd. (e)(2)(P).)  We

1

further conclude the People carried their burden of proof because the evidence in the record—when viewed in accordance with the case law applicable at that time—is sufficient to establish Grinder actually used force or violence in committing the offense to which he pleaded no contest. Lastly, we conclude Grinder has not demonstrated he received ineffective assistance of counsel during the 2005 proceedings involving his initial certification or during his subsequent recommitment proceedings.

3. On page 3, the last sentence of the second paragraph under the heading "**PROCEDURAL AND FACTUAL HISTORY**" beginning "Grinder did not plead" is deleted and replaced with the following sentences:

Grinder did not plead to using force or violence in the commission of that crime. However, the January 2003 plea form signed by Grinder and his attorney stated: "The facts on which I base my plea are: *People v. West* [(1970) 3 Cal.3d 595] — submitted on the police reports." The police reports described acts using force.

This modification removes footnote No. 3, which will require renumbering of subsequent footnotes 4 and 5.

4. On page 3, the third paragraph under the heading "**PROCEDURAL AND FACTUAL HISTORY**" beginning "In February 2003" is deleted in its entirety and replaced with the following paragraph:

At the February 2003 sentencing hearing, the probation officer's report was discussed. Grinder's counsel objected to statements in the report about the use of force because Grinder did not plead to the use of force in connection with any charge. Counsel requested the statements about force be stricken. The trial court responded, "Okay," but did not issue a ruling on the request to strike. Neither the deputy district attorney nor the probation officer attending the hearing responded to the request to strike. Grinder was sentenced to a term of six years four months in state prison, consistent with the plea agreement. The sentence specifically included two years on the section 288a, subdivision (b)(2) conviction, adjusted to eight months pursuant to the plea agreement.

5. On page 7, the first full paragraph beginning " In August 2024" is deleted in its entirety and replaced with the following paragraph:

2

In August 2024, after the trial court denied his petition, Grinder filed the current petition for a writ of habeas corpus with this court. The writ petition challenges Grinder's 2005 certification as an MDO, rather than his most recent recommitment order. The petition raised five grounds. The first ground asserted "the Legislature did not intend for individuals convicted of non-violent offenses against victims older than fourteen to be subject to confinement under the MDO statute." The next three grounds attacked the People's "reliance on hearsay statements from the probation report to establish that petitioner qualifies as an MDO under section 2962, subdivision (e)(2)(P)" by asserting that reliance violated Grinder's "Sixth Amendment right to a trial by jury," his "Due Process rights and his Sixth Amendment right to confront his accuser," and "the agreement between the People and the petitioner and deprive[d] him of the benefit of his negotiated bargain." The fifth ground stated, "[t]o the extent petitioner's claim was waived or can be deemed moot due to a failure to raise the claim at the time of his commitment or at any of his recommitment proceedings, [Grinder] received ineffective assistance of counsel in violation of the Sixth Amendment."

6. On page 8, the following sentence is added to the end of the first paragraph of the Discussion after the citation to *Stevens*:

Section 2962, subdivision (e)(2)(P) is the catchall provision relevant to this proceeding and it states a qualifying offense includes "[a] crime not enumerated in subparagraphs (A) to (O), inclusive, in which the prisoner used force or violence, or caused serious bodily injury as defined in paragraph (4) of subdivision (f) of Section 243."

7. On page 8, the following section is added before section "I. TIMELINESS OF THE CHALLENGE TO THE 2005 MDO CERTIFICATION," which will require renumbering of all subsequent headings:

I. SCOPE OF THE MDO ACT'S CATCHALL PROVISION

Grinder contends the Legislature did not intend for an MDO commitment to be based on convictions for nonviolent sexual offenses against victims older than 14, such as a conviction of nonforcible oral copulation under section 288a, subdivision (b)(2) or a conviction under the current versions of section 288, subdivision (c)(1) or section 287, subdivision (b)(2). This contention is based on the specific sex crimes listed in section 2962, subdivision (e)(2)(F) through (K) and the analysis in *People v. Hayes* (2003) 105 Cal.App.4th 1287 (*Hayes*) of the crime of recklessly causing a fire in violation of section 452.

3

In *Hayes*, the court applied the doctrine that " 'the expression of one thing is the exclusion of another' " (*Hayes*, *supra*, 105 Cal.App.4th at p. 1290) and concluded "the Legislature did not intend to include *recklessly* causing a fire among the offenses that qualify an offender for commitment as an MDO." (*Id.* at p. 1291.) This inference of legislative intent was based on the "specific inclusion of two types of unlawfully causing or attempting to cause a fire, both of which require a showing of willfulness and malice, and the 'aggravated nature of the other crimes specified in section 2962, subdivision (e)(2).' " (*Ibid*.) As a result of this conclusion about legislative intent, the court did not accept the People's contention "that Hayes's offense qualifies as a crime of 'force or violence' under section 2962's 'catchall' provision—subdivision (e)(2)(P)." (*Id*. at p. 1290.)

We conclude *Hayes* is distinguishable based on the procedures taken, the findings made, and the qualifying offense. Therefore, we will not extend the analysis and conclusion about legislative intent adopted in *Hayes* for fire-setting crimes to the sex crimes referred to in Grinder's argument. The procedures taken in *Hayes* do not appear to have included the People presenting evidence, either at the administrative hearing or at the court trial, that the crime to which Hayes pleaded guilty involved his use of force or violence. (See *Hayes*, *supra*, 105 Cal.App.4th at p. 1289.) Thus, it appears the People's argument that Hayes's crime of recklessly causing a fire "qualifie[d] as a crime of 'force or violence' under section 2962's 'catchall' provision—subdivision (e)(2)(P)" was a categorical (i.e., legal) argument not based on a specific finding of fact that Hayes used force or violence. (*Id.* at p. 1290.) Here, in contrast, Grinder was certified as an MDO after the chief psychiatrist reviewed the evidence, albeit hearsay, and specifically found Grinder used force or violence in committing the qualifying offense. This certification and its findings were affirmed by the Board after his September 2005 hearing. Thus, the findings about Grinder's use of force are different from the findings about Hayes's offense.

Further, the analysis of legislative intent in *Hayes* cannot be rationally extended to a plea to nonforcible oral copulation under section 288a, subdivision (b)(2) where there is a finding that force was used to commit the crime. The Legislature clearly intended oral copulation by force or violence to be a basis for an MDO commitment because the MDO Act's qualifying offenses include "[o]ral copulation by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (§ 2962, subd. (e)(2)(H).) Grinder's argument, in effect, asks for disparate treatment of persons who used force in committing the crime of oral copulation. Persons who pleaded to nonforcible oral copulation and, in the

4

commitment proceeding, are proven to have used force would receive more favorable treatment than persons who pleaded no contest or were found guilty of forcible oral copulation, even though the underlying criminal behavior was the same for both groups. The most realistic inference of legislative intent is that the Legislature intended the catchall provision to be used so the two groups would receive similar treatment under the MDO Act. From a practical point of view, accepting Grinder's argument would mean a person's plea to a crime that does not include force or violence as an element operates as a legal bar to the People proving in a later commitment proceeding that force or violence was used. The MDO Act's test does not support the existence of such a bar and, thus, we conclude Grinder's statutory interpretation would narrow the reach of the catchall provision in subdivision (e)(2)(P) of section 2962 in a manner contrary to the Legislature's intent.

In sum, we adopt a literal interpretation of the catchall provision and conclude the crime of nonforcible oral copulation is a qualifying offense under the MDO Act when the People carried their burden of proving the crime actually was one "in which the prisoner used force or violence." (§ 2962, subd. (e)(2)(P).)

Grinder also contends the application of the catchall provision to his conviction violated the plea agreement. He argues the People deprived him of the benefit of his negotiated bargain by relying on hearsay statements in the probation report to prove his conviction of conviction of nonforcible oral copulation was a qualifying offense under section 2962, subdivision (e)(2)(P). This argument fails for lack of proof that the plea agreement included any promise (i.e., bargain) about what the People would or would not do in a subsequent MDO commitment proceeding. (See generally, *People v. Kim* (2011) 193 Cal.App.4th 1355, 1360 [generally, plea bargains are enforceable under contract principles].) Similarly, Grinder's related claim that his plea agreement was violated when the People used dismissed charges to impose adverse sentencing consequences lacks proof. The certification of Grinder as an MDO lists a violation of section 288a, subdivision (b)(2) as a controlling offense and the reporter's transcript shows Grinder pleaded no contest to that charge. Thus, the record shows dismissed charges were not used. Based on the foregoing, we reject the fourth ground raised in Grinder's habeas corpus petition.

8. On page 8, heading "II. CHALLENGES TO THE 2005 MDO CERTIFICATION" is revised to "II. USE OF HABEAS CORPUS TO CHALLENGE THE 2005 CERTIFICATION"

5

9.    On page 9, the first full paragraph beginning "Here, we consider the question" is deleted and replaced with the following paragraph:

Here, we consider the general legal question left open by the Supreme Court in *Lopez*—that is, whether a person may "challenge his certification by filing a petition for writ of habeas corpus." (*Lopez, supra,* 50 Cal.4th at p. 1067.) "The right to file a petition for a writ of habeas corpus is guaranteed by the state Constitution (Cal. Const., art. I, § 11), and regulated by statute (§ 1473 et seq.)." (*In re Harris* (1993) 5 Cal.4th 813, 824–825, disapproved on other grounds in *Shalabi v. City of Fontana* (2021) 11 Cal.5th 842.)

10.    On page 9, the third paragraph beginning "Based on the foregoing principles" is deleted in its entirety and replaced with the following paragraphs:

Based on the foregoing principles, we conclude a person may bring a petition for writ of habeas corpus outside the one-year initial commitment period to challenge a static commitment factor in his or her MDO certification, including whether the crime was one "in which the prisoner used force or violence" (§ 2962, subd. (e)(2)(P)). The People's return to the order to show cause does not cite a case reaching a different conclusion on the issue left open by the *Lopez* court.

The next question about the availability of habeas corpus relief involves the timeliness of Grinder's claims under the particular circumstances of this case. Our Supreme Court has concluded that courts determine the timeliness of *claims* in a petition for writ of habeas corpus, not whether the petition as a whole was timely filed. (*Robinson v. Lewis* (2020) 9 Cal.5th 883, 897.) There are no specific time limits for determining the timeliness of a claim. (*Ibid*.) Rather, California courts employ a three-level analysis for assessing whether claims in a habeas corpus petition have been timely filed. (*Id*. at p. 898.) First, a claim must be presented without substantial delay, which is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim. (*Id*. at pp. 897–898.) Second, if there was a substantial delay, a court will address a claim's merit if the petitioner demonstrates good cause for the delay. (*Id*. at p. 898.) Third, even when a claim is presented after a substantial delay without good cause, a court will consider the merits in a noncapital case if the claim falls under one of three narrow exceptions. (*Ibid*.)

6

Here, we will not undertake the three-level timeliness analysis of each of the five grounds contained in Grinder's petition for writ of habeas corpus. Rather, we assume for purposes of this proceeding that Grinder had good cause for not raising the claims earlier and reach the merits of those claims.

11. On page 9, the heading "II. CHALLENGES TO THE 2005 MDO CERTIFICATION" is renumbered from II. to III.

12. On page 12, new footnote 5 is added to the end of the paragraph directly before section B. after the citation "(See *Apprendi v. New Jersey* (2000) 530 U.S. 466…)"

   **5**     Grinder's petition for rehearing contends the parties never had an opportunity to brief the issue of how the structure of the MDO Act applies to an *Apprendi* claim and, therefore, supplemental briefing is required pursuant to Government Code section 68081. We reject this contention because the issue involving Grinder's Sixth Amendment right to a jury determination was "proposed" for purposes of Government Code section 68081. In our view, the issue was fairly included or encompassed in the broader Sixth Amendment issues raised in Grinder's petition. (See *People v. Alice* (2007) 41 Cal.4th 668, 679 ["the fact that a party does not address an issue, mode of analysis, or authority that is raised or fairly included within the issues raised does not implicate the protections of section 68081"].) Thus, the opportunity existed even though Grinder did not actually brief the issue. (*Id*. at p. 677.)

13. On page 20, the heading "III. INEFFECTIVE ASSISTANCE OF COUNSEL" is renumbered from III. to IV.

There is no change in judgment.

The petitions for rehearing filed on September 18, 2025, and September 19, 2025, are hereby denied.

                                                                          FRANSON, J.

**WE CONCUR:**


LEVY, ACTING P. J.


SNAUFFER, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re RICHARD EUGENE GRINDER | F088488 |
| On Habeas Corpus. | (Super. Ct. No. CF01671189-9) |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus. Arlan L. Harrell, Judge.

Law Offices of Douglas C. Foster and Douglas C. Foster for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and Catherine Tennant Nieto, Deputy Attorneys General, for Respondent.

-ooOoo-

In his petition seeking a writ of habeas corpus, Richard Eugene Grinder challenges his initial commitment in 2005 as a mentally disordered offender (MDO) under Penal Code section 2962.[1] Grinder contends the commitment was, and continues to be, unlawful because the crimes he was convicted of did not qualify him for certification as an MDO. In particular, he argues that a mental health professionals' reliance on hearsay statements in a probation report to support their opinions that he used force or violence in

---

[1] Undesignated statutory references are to the Penal Code.

1

committing a qualifying crime violated his rights under the Sixth Amendment, the due process clause, and the rules of evidence as construed in *People v. Stevens* (2015) 62 Cal.4th 325 (*Stevens*).

The People argue that the amount of time that has lapsed since his initial commitment renders the challenge waived under *Lopez v. Superior Court* (2010) 50 Cal.4th 1055 (*Lopez*), which limited certain challenges to the initial one-year commitment period.

We publish this opinion for two reasons. First, it answers a question explicitly left open by the Supreme Court in *Lopez*—whether a petition for writ of habeas corpus is an appropriate procedural mechanism for challenging an initial MDO certification on the ground petitioner did not commit a qualifying offense. (*Lopez*, *supra*, 50 Cal.4th at p. 1067.) We conclude a habeas corpus petition is an appropriate vehicle for such a challenge. Second, we conclude the rule announced in *Stevens* is not retroactive, which resolves an issue not addressed in a published decision. The *Stevens* rule provides that "the People may not prove the facts underlying the commitment offense (that are necessary to establish the qualifying offense) through a mental health expert's opinion testimony." (*Stevens*, *supra*, 62 Cal.4th at p. 339.)

In addition, we conclude Grinder's habeas corpus petition is not time barred, even though he did not challenge his 2005 MDO certification in a superior court proceeding brought under section 2966, subdivision (b). As to the merits of Grinder's petition, we conclude the evidence in the record—when viewed in accordance with the case law applicable at that time—is sufficient to establish Grinder committed a qualifying "felony involving behavior [and the use of force or violence] described in subdivision (e)(2)(P)" of section 2962. (*Stevens, supra*, 62 Cal.4th at p. 328.) Furthermore, we conclude Grinder has not demonstrated he received ineffective assistance of counsel in connection with his initial certification in 2005 or during his subsequent recommitment proceedings.

2

We therefore deny his petition for a writ of habeas corpus.

## PROCEDURAL AND FACTUAL HISTORY

Grinder was charged by information in 2002 with 12 counts of various sexual offenses involving three minor males. Pursuant to a plea agreement in January 2003, Grinder pleaded no contest to five violations (counts 4–8) of section 288, subdivision (c)(1), committing lewd and lascivious acts upon a child who was 14 or 15 years old. Three of these counts involved two different 14-year-olds, while the remaining two counts involved a 15-year-old.

Grinder also pleaded no contest to one violation of section 288a, subdivision (b)(2), oral copulation with a victim under 16 years of age, as a lesser related offense to count 9. Count 9 originally charged a violation of section 288a, subdivision (c)(2), forcible oral copulation. That count was amended to charge a violation of section 288a, subdivision (b)(2),[2] which covers oral copulation without force or violence. The change of plea form signed by Grinder and his attorney, and the reporter's transcript of the change of plea hearing confirm the party's agreement to the amended oral copulation charge, the People's motion to amend count 9, and the trial court's order confirming the amendment. Grinder did not plead to using force or violence in the commission of that crime, although he and counsel admitted that the factual basis of his plea was contained in the police reports under *People v. West*,[3] which describe acts using force.

In February 2003, Grinder was sentenced to a term of six years four months in state prison, consistent with the plea agreement. This sentence specifically included two

---

[2]   Former section 288a was renumbered to section 287, effective January 1, 2019. (Stats. 2018, ch. 423, § 49; see *People v. Caratachea* (2024) 107 Cal.App.5th 392, 395, fn. 2.)

[3]   *People v. West* (1970) 3 Cal.3d 595

3

years on the former section 288a, subdivision (b)(2) conviction, adjusted to eight months pursuant to the plea agreement.  This sentence is confirmed by the abstract of judgment.

*MDO Certification*

In May 2005, Grinder was evaluated by two psychologists, Dr. Robert Weber and Dr. Eric Simon, to determine if he met the criteria of an MDO.  On May 27, 2005, a chief forensic psychiatrist of the Department of Corrections signed a "CERTIFICATION OF MENTALLY DISORDERED OFFENDER" (boldface omitted) setting forth his professional opinion that Grinder met the criteria in section 2962 because Grinder had a severe mental disorder, and he was sentenced for a crime in which he used or threatened to use force or violence.  The certification is a two-page form, and it listed its attachments as the evaluations of the two psychologists, the probation officer's report, an abstract of judgment, a legal status summary, and a form CDC-112.  On May 31, 2005, Grinder was admitted to the Atascadero State Hospital.

On September 13, 2005, the Board of Parole Hearings (Board) held a certification hearing.  The summary of the MDO hearing and decision stated Grinder appeared at the hearing and listed Dr. Sugerman as the only witness.   The Board reaffirmed the May 27, 2005 certification.

After the hearing and decision, Grinder was given notice of his right for a placement hearing.  Grinder signed a form requesting a placement hearing before the Board and marked "NO" to the form's question whether he would like two doctors to test him before the hearing.  The Board held the placement hearing on October 31, 2005.  The Board's summary of the hearing and decision stated Grinder waived his right to appear and Dr. Heinze was the only witness who testified.  The Board found Grinder could not be safely and effectively treated in the community as an outpatient and, as a result, Grinder's request for outpatient treatment was denied.

4

Pursuant to section 2966, subdivision (b), an offender who disagrees with the Board's determination that he or she meets the criteria of section 2962 may challenge that determination by filing a petition in the superior court of the county where the offender is being treated. At this civil hearing, the offender has the right to be represented by an attorney, the right to a jury trial, and the right to a unanimous verdict. (§ 2966, subd. (b); see *Lopez*, *supra*, 50 Cal.4th at p. 1062.) At oral argument, Grinder's counsel confirmed that no such petition had been filed, which is consistent with the records available to this court.

Since 2005, Grinder has remained in the custody of the Department of State Hospitals pursuant to annual petitions for continued treatment filed by the district attorney. The petitions are authorized by section 2970.

### Challenge to Recommitment

The only record this court has of Grinder challenging a recommitment order is his July 2022 appeal of an order granting the district attorney's petition and extending his commitment as an MDO for an additional year. Our opinion affirmed the trial court's order. (*People v. Grinder* (Mar. 28, 2003, F084612) [nonpub. opn.].)

### Habeas Corpus

After that unsuccessful challenge of the 2022 recommitment order, Grinder attacked his original 2005 MDO certification by filing a petition for a writ of habeas corpus in the Fresno County Superior Court on March 7, 2023. He argued the initial certification was erroneous because none of the charges he pleaded no contest to in 2003 were listed in section 2962, subdivision (e)(2)(A)-(O) as convictions qualifying him for civil commitment as an MDO. Addressing a "catchall provision," he argued that he did not admit to any facts as part of his plea to nonviolent oral copulation that would support a finding that he used force or violence. (See § 2962, subd. (e)(2)(P) [nonenumerated crimes involving behavior in which the defendant "used force or violence"].)

5

In March 2024, the trial court held an evidentiary hearing on the petition for habeas corpus. Documents were admitted into evidence. No witnesses testified. Grinder argued (1) he was not convicted of a crime that required the use of force or violence as an element of the offense; (2) there was no admissible evidence in the underlying criminal case that he used force or violence during the commission of any of the offenses; and (3) he did not admit to any facts as part of his plea bargain that would support a finding that he used force or violence.

On May 31, 2024, the trial court filed an order denying the petition. The court rejected Grinder's argument, which was based on *People v. Sanchez* (2016) 63 Cal.4th 665, the Sixth Amendment and due process, that hearsay evidence contained in the probation report could not be used to prove he used force or violence during the commission of the crime of oral copulation. The court concluded the February 2003 probation report was admissible documentary evidence under section 2962, subdivision (f).[4] Based on the statement in the probation report that Grinder used force during the

---

[4] Section 2962, subdivision (f) states in full: "For purposes of meeting the criteria set forth in this section, the existence or nature of the crime, as defined in paragraph (2) of subdivision (e), for which the prisoner has been convicted may be shown with documentary evidence. The details underlying the commission of the offense that led to the conviction, including the use of force or violence, causing serious bodily injury, or the threat to use force or violence likely to produce substantial physical harm, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of State Hospitals."

This provision was adopted by the Legislature in 2016 and became effective on January 1, 2017—that is, it was not urgency legislation. (Stats. 2016, ch. 430, § 1 [Sen. Bill No. 1295].) The amendment abrogated the California Supreme Court's December 2015 decision in *Stevens*, *supra*, 62 Cal.4th 325, which concluded the Evidence Code's hearsay provision made probation reports and police reports inadmissible and the facts underlying a commitment offense could not be proven through a mental health expert's opinion testimony. (*Id*. at p. 339.) The court stated the Legislature was free to adopt a different evidentiary rule for MDO proceedings, which the Legislature did by enacting the current version of subdivision (f) of section 2962.

September 2001 oral copulation incident, the court concluded his oral copulation conviction fell within the "catchall provision" under which Grinder had suffered a conviction that qualified him for involuntary MDO treatment under the "catchall provision" in section 2962, subdivision (e)(2)(P),[5] and Grinder had suffered a conviction that qualified him as an MDO. Accordingly, the court did treat the underlying conviction for nonforcible oral copulation (§ 288a, subd. (b)(2)) as a qualifying offense. Forcible oral copulation is an enumerated offense, but under the terms of the plea bargain, Grinder did not plead no contest to that offense.

In August 2024, after the trial court denied his petition, Grinder filed the current petition for a writ of habeas corpus with this court. The writ petition challenges Grinder's 2005 certification as an MDO, rather than his most recent recommitment order.

In November 2024, this court issued an order requesting an informal response from the People on two questions relating to the habeas corpus petition. The People's informal response to these questions and Grinder's reply were filed in January 2025. In February 2025, this court issued an order to show cause to consider why the relief sought by Grinder should not be granted. In March 2025, the People filed a return to the order to show cause and Grinder filed a reply to the return.

## DISCUSSION

The MDO Act (§ 2960 et seq.) is a civil commitment statute that provides for treatment as a condition of parole for certain offenders about to be released on parole. (*People v. Sheek* (2004) 122 Cal.App.4th 1606, 1610.) A chief psychiatrist of the Department of Corrections and Rehabilitation must certify that the prisoner suffers from a severe mental condition and satisfies additional criteria, including that the prisoner represents a substantial danger of physical harm to others by reason of the disorder.

---

[5] That provision refers to crimes "not enumerated in subparagraphs (A) to (O), inclusive, in which the prisoner used force or violence[.]" (§ 2962, subd. (e)(2)(P).)

7

(§ 2962, subd. (d)(1).) In addition, a "civil commitment under the MDO Act requires that the underlying qualifying offense involve one of the offenses specified in section 2962, subdivision (e)(2)(A) through (O) *or* be a felony involving behavior described in subdivision (e)(2)(P) or (Q)." (*Stevens*, *supra*, 62 Cal.4th at p. 328.)

## I. TIMELINESS OF THE CHALLENGE TO THE 2005 MDO CERTIFICATION

A prisoner may challenge an MDO certification by requesting a hearing before the Board pursuant to section 2966, subdivision (a) and, if unsuccessful, by filing a petition for hearing in superior court to challenge the certification. (§ 2966, subd. (b).) The timeliness of challenges to certain of the commitment criteria was addressed by our Supreme Court in *Lopez*, *supra*, 50 Cal.4th 1055. The court interpreted section 2966 to mean that once an MDO's treatment is continued past the initial one-year commitment period of parole, the MDO may request a hearing before the Board only to challenge whether the dynamic commitment criteria are still satisfied. (*Lopez*, *supra*, at p. 1065.) As a result, the court concluded "Lopez may not challenge via section 2966, subdivision (b) the propriety of his MDO certification based upon the static commitment criteria, [but] express[ed] no view on whether he could challenge his certification by filing a petition for writ of habeas corpus." (*Lopez*, *supra*, at p. 1067.)

The second question in our request for informal briefing asked whether Grinder waived the ability to seek relief because he failed to challenge the validity of his initial commitment in 2005 during the first year of that commitment. The People argued a waiver occurred and Grinder's petition should be denied. The People relied heavily on *Lopez*'s holding that an MDO may challenge "static factors" justifying his or her commitment only during the initial one-year period of treatment. (*Lopez*, *supra*, 50 Cal.4th at p. 1065). One of the "static" factors is whether the MDO committed an underlying qualifying offense. (*People v. Pipkin* (2018) 27 Cal.App.5th 1146, 1152.) The qualifying offenses are listed in section 2962, subdivision (e).

8

Here, we consider the question left open by the Supreme Court in *Lopez*—that is, whether Grinder may "challenge his certification by filing a petition for writ of habeas corpus." (*Lopez, supra,* 50 Cal.4th at p. 1067.)  Although Grinder waited almost 20 years to bring his challenge to a static commitment factor in court, "[t]he right to file a petition for a writ of habeas corpus is guaranteed by the state Constitution (Cal. Const., art. I, § 11), and regulated by statute (§ 1473 et seq.)." (*In re Harris* (1993) 5 Cal.4th 813, 824–825.)  "[S]ince the question is one of excessive punishment, it is a proper matter for us to consider on a writ of habeas corpus, despite his delay." (*In re Ward* (1966) 64 Cal.2d 672, 675.)

The purpose of habeas corpus is to challenge unlawful imprisonment or restraint, including vindicating rights to which a prisoner is entitled while in confinement. (*Cox v. Superior Court* (2016) 1 Cal.App.5th 855, 859–860.)  A writ of habeas corpus has been referred to as " 'the safe-guard and the palladium of our liberties,' " and is " 'regarded as the greatest remedy known to the law whereby one unlawfully restrained of his [or her] liberty can secure … release.' " (*In re Clark* (1993) 5 Cal.4th 750, 763–764.)

Based on the foregoing principles, we conclude Grinder may bring a petition for writ of habeas corpus challenging a static commitment factor in his MDO certification, including whether he committed a crime in which he "used force or violence" (§ 2962, subd. (e)(2)(P)), outside the one-year initial commitment period.  The People's return to the order to show cause does not cite a case reaching a different conclusion on the issue left open by the *Lopez* court.

II.     CHALLENGES TO THE 2005 MDO CERTIFICATION

The petitioner has the burden of providing a record relevant to the allegations in the habeas corpus petition.  (See *In re Coronado* (1978) 87 Cal.App.3d 788, 794.)  "When presented with a petition for a writ of habeas corpus, a court must first determine whether the petition states a prima facie case for relief—that is, whether it states facts

9

that, if true, entitle the petitioner to relief—and also whether the stated claims are for any reason procedurally barred." (*People v. Romero* (1994) 8 Cal.4th 728, 737.)

A.    The Certification Followed the Law Existing at the Time

Here, we consider whether the chief psychiatrist's 2005 certification of Grinder as an MDO and the Board's decision upholding the certification violated Grinder's rights because there was a lack of proof that he committed a crime in which he "used force or violence." (§ 2962, subd. (e)(2)(P).) In this subpart of the opinion, the question is limited to whether Grinder's rights were violated under the law as it existed at the time of the certification.

In *People v. Miller* (1994) 25 Cal.App.4th 913 (*Miller*), the appellant challenged a trial court's finding that he was an MDO. (*Id*. at p. 915.) He argued (1) a psychologist's reference to the probation report to conclude his commitment offense involved force or violence violated the double hearsay rule and (2) there was no substantial evidence of due certification under the MDO Act. (*Miller, supra,* at pp. 915–916.) In short, the appellant raised the hearsay arguments now raised by Grinder. The Second District affirmed the trial court's order and stated:

> "We hold, in the context of an MDO proceeding, that a qualified mental health professional may refer to and consider the underlying probation report in expressing an opinion that the prisoner is an MDO. This includes the criterion or element that the underlying offense is one involving 'force or violence.'" (*Id*. at p. 917.)

The court concluded the probation report was sufficiently reliable to allow a mental health professional to rely upon it in forming an MDO opinion because such reports were sufficiently reliable to provide the factual basis for trial courts imposing felony sentences. (*Miller*, *supra*, 25 Cal.App.4th at p. 918.)

*Miller*'s legal conclusions regarding hearsay and the use of a mental health professional's expert opinion to establish all MDO criteria was good law when a chief

10

psychiatrist certified Grinder as an MDO in May 2005 and when the Board affirmed that determination later in 2005.  In March 2005, the Second District stated:  "We have previously held that a qualified mental health professional may render an opinion on the force or violence criterion and may rely on the probation report from the underlying case in formulating that opinion.  (*People v. Valdez* [(2001)] 89 Cal.App.4th [1013,] 1017; *People v. Miller*[, *supra,*] 25 Cal.App.4th 913, 917–919.)"  (*People v. Martin* (2005) 127 Cal.App.4th 970, 976, review denied June 22, 2005 (*Martin*).)  In *Martin*, the court concluded the mental health professionals "in this case properly relied on the probation report as the basis for their opinions that the crime involved force or violence, and their opinions were substantial evidence that appellant's … conviction was a qualifying offense."  (*Id*. at p. 977.)  Given the three published decisions predating Grinder's certification as an MDO, we conclude the chief psychiatrist acted properly in relying on the probation report (which was listed as an attachment to the certification form) and the evaluations of two psychologists in determining Grinder qualified as an MDO.  Similarly, the Board properly relied on the opinions of the mental health professionals in affirming the certification.  In other words, the certification was not contrary to the law as it existed in 2005.

Next, we consider the claims in Grinder's habeas corpus petition that the reliance on hearsay statements from the probation report to establish that he qualified as an MDO under section 2962, subdivision (e)(2)(P) violated his due process rights, his Sixth Amendment right to a trial by jury, and his Sixth Amendment right to confront his accuser.  We conclude the right to due process was adequately protected by the MDO Act's two-tiered process, which provides a prisoner certified as an MDO with the right to a hearing before the Board and, if the prisoner disagrees with the Board's decision, the right to file petition for a hearing in the superior court.  (§ 2966, subds. (a), (b).)  It is at the second tier that the Sixth Amendment rights to a jury trial and to confront a witness

11

could be invoked.  Here, Grinder did not seek a hearing in superior court.  Consequently, there was no violation of the rights he could have asserted at the hearing, such as the right to have a jury determine the facts necessary to establish the statutory commitment criteria.  (See *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [Sixth Amendment right to have a jury decide facts that increase the penalty for a crime beyond the prescribe statutory maximum].)

B.      *Stevens* Does Not Apply Retroactively

In this subpart of the opinion, we expand the question whether Grinder's rights were violated during the 2005 certification process and consider whether the certification is subject to the retroactive application of the principles establish in *Stevens* in 2015.

1.      *Background*

In April 2012, the Fourth District created a split of authority with the *Miller-Valdez-Martin* line of cases.  (*People v. Baker* (2012) 204 Cal.App.4th 1234, 1245, fn. 5 (*Baker*).)  In an appeal from a trial court's order denying the appellant's challenge to a finding she was an MDO, the court stated an expert may not relate the out-of-court statement of another as independent proof of the facts asserted in the out-of-court statement and, further, a court may not rely on hearsay as related by an expert as the basis for the expert's opinion as independent proof of the facts asserted in the hearsay statements.  (*Id*. at p. 1246.)  The court concluded: "Although an expert opinion is required as to some of the criteria in order to determine whether the prisoner is an MDO, expert opinion is *not* necessary—or admissible—with respect to the facts underlying the offense[.]"  (*Id*. at p. 1245, fn. 9.)

In December 2015, the California Supreme Court resolved the split of authority by disapproving *Miller* as "inconsistent with the MDO Act and the rules of evidence regarding the proper scope of expert opinion testimony."  (*Stevens*, *supra*, 62 Cal.4th at p. 336.)  The court stated that "proof of a qualifying conviction under the MDO Act is based

on facts rather than on defendant's psychological condition, and thus does not call for a mental health expert's opinion testimony." (*Ibid*.) The court recognized an expert at an MDO hearing could rely on hearsay documents in forming an opinion on other statutory criteria, including whether the defendant's severe mental disorder was one of the causes of or an aggravating factor in the commission of the crime that qualified as an MDO Act commitment offense. (*Stevens, supra,* at p. 336.)

In *Stevens*, the court supported its interpretation of the MDO Act and rules of evidence by comparing the MDO Act to the Sexually Violent Predator (SVP) Act (Welf. & Inst. Code, § 6600 et seq.). (*Stevens*, *supra*, 62 Cal.4th at p. 338.) The SVP Act included an exception to the rules of evidence to allow admission of multiple-level hearsay contained in specified documents, including probation and sentencing reports. (Welf. & Inst. Code, § 6600, subd. (a)(3); see *People v. Otto* (2001) 26 Cal.4th 200, 206–209.) The court stated the Legislature knew how to adopt special rules of evidence to govern commitment proceedings and, in the MDO Act, had not adopted an evidentiary rule allowing the use of multiple-level hearsay to prove the details of the underlying commitment offense. (*Stevens*, *supra*, at p. 338.) The court also noted "that the Legislature is free to create exceptions to the rules of evidence as it has done in the SVP context." (*Id*. at p. 339.)

In 2016, the Legislature amended section 2962 as suggested in *Stevens* by adding a new subdivision (f). (Stats. 2016, ch. 430, § 1 [Sen. Bill. No. 1295].) The amendment became effective on January 1, 2017—that is, it was not urgency legislation. The legislation and the related legislative history did not address whether the new provision applies retroactively. (See Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1295 (2015–2016 Reg. Sess.) Aug. 22, 2016, pp. 1–9.)

13

### 2. *Retroactivity of a New Rule Created by a Judicial Decision*

California courts have applied two tests for retroactivity, often referred to as the federal and state tests. (*In re Thomas* (2018) 30 Cal.App.5th 744, 754.) Under both tests, a judicial decision that creates a "new rule" generally is not given retroactive effect in cases on collateral review that were final when the rule was announced. (*Teague v. Lane* (1989) 489 U.S. 288, 306 (*Teague*); *Donaldson v. Superior Court* (1983) 35 Cal.3d 24, 36.) Thus, the threshold question under both tests is whether a judicial decision constitutes a new rule. (*In re Ruedas* (2018) 23 Cal.App.5th 777, 799.)

Under federal law, a case generally is considered to have announced a new rule if it breaks new ground—that is, "the result was not dictated by precedent existing at the time the defendant's conviction became final." (*Teague*, *supra*, 489 U.S. at p. 301.) Under this principle, *Stevens* announced a new rule because the result was not dictated by precedent existing in 2005 when Grinder was certified as an MDO. That precedent was established by the *Miller-Valdez-Martin* line of cases.

Under California law, a decision announces a new rule if it (1) explicitly overrules a precedent of the California Supreme Court, or (2) disapproves a practice impliedly sanctioned by prior decisions of the California Supreme Court, or (3) disapproves a longstanding and widespread practice expressly approved by a near-unanimous body of lower-court authorities. (*In re Milton* (2022) 13 Cal.5th 893, 906 (*Milton*); see *Donaldson v. Superior Court*, *supra*, 35 Cal.3d at p. 36 [a decision that "only elucidates and enforces prior law" does not create new law].)

First, *Stevens* did not explicitly overrule precedent of the California Supreme Court. Second, it does not appear that the two main conclusions reached in *Stevens*

14

disapproved a practice impliedly sanctioned by prior decisions of the California Supreme Court.[6]

The third category requires a more detailed analysis. We initially consider a matter of timing. In *Milton*, the court described the three categories without explicitly identifying the point in time when the old rule was in effect. The federal standard for a "new rule" states the determination compares the result dictated by the new decision with the precedent existing when the defendant was convicted. (See *Teague*, *supra*, 489 U.S. at p. 301.) It is reasonable to infer the same comparison is made under California law because *Milton* did not state otherwise, and another approach would have created a significant difference between federal and state law worth mentioning. Accordingly, in applying California's third category (see *Milton*, *supra*, 13 Cal.5th at p. 906), we conclude the question is whether there was a near-unanimous body of lower-court decisions and a longstanding and widespread practice in 2005 that "a qualified mental health professional may render an opinion on the force or violence criterion and may rely on the probation report from the underlying case in formulating that opinion." (*Martin*, *supra*, 127 Cal.App.4th at p. 976, citing *People v. Valdez*, *supra*, 89 Cal.App.4th at p. 1017 and *Miller*, *supra*, 25 Cal.App.4th at pp. 917–919.)[7]

---

[6]    As relevant here, the court concluded (1) "a mental health expert's testimony in support of a defendant's MDO commitment may not be used to prove the defendant committed a qualifying offense [that] … involved behavior described in subdivision (e)(2)(P) or (Q)" and (2) "mental health experts may not testify about a topic that is not 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact,' " such as whether the defendant used or threatened to use force or violence. (*Stevens*, *supra*, 62 Cal.4th at p. 329.) The first conclusion was based on the rules of evidence governing hearsay and expert opinions; those rules had not been modified by the MDO Act. (*Stevens*, *supra*, at pp. 336, 338.)

[7]    *Martin* was filed on March 24, 2005, two months before Grinder was certified by a chief psychiatrist as an MDO and six months before the Board upheld the certification. In addition, the Supreme Court denied review in *Martin* about three months before the Board's decision.

15

We conclude (1) the three published cases of *Martin*, *Valdez*, and *Miller* constitute a body of lower-court decisions and (2) the way those cases treated the opinions of mental health professionals that relied on probation reports was a longstanding and widespread practice because those cases span an 11-year period.  In particular, Dr. Robert Weber would have been familiar with the practice of relying on probation reports in forming an opinion about whether a prisoner qualified as an MDO.  He was one of the psychologists who evaluated Grinder in May 2005.  Dr. Weber also "relied upon the 1988 probation report and the reports of other mental health experts in concluding [Mr. Miller] met each and every criterion or element of an MDO determination."  (*Miller*, *supra*, 25 Cal.App.4th at p. 916.)  He also evaluated Mr. Martin for his MDO certification.  (*Martin*, *supra*, 127 Cal.App.4th at pp. 975–976.)  Based on the foregoing, we conclude *Stevens* established a new rule under the third category set forth in *Milton*, *supra*, 13 Cal.5th at page 906.

To summarize, *Stevens* qualifies as a decision announcing a "new rule" under both the federal and state tests.  Therefore, *Stevens* would be retroactively applied only if there is an applicable exception to the principle that new rules are not retroactively applied in collateral review proceedings.

### 3. New Procedural Rule Is Not Retroactive

Under either the federal or state test for retroactivity, a new rule will be given retroactive effect if it is substantive, as opposed to procedural.  (*Teague*, *supra*, 489 U.S. at p. 311; *People v. Mutch* (1971) 4 Cal.3d 389, 395–396.)  Therefore, the second question under both tests is whether the new rule announced by the judicial decision is procedural or substantive.

Under the federal test, rules that are both new and procedural do not apply retroactively to final judgments, without exception.  (*Edwards v. Vannoy* (2021) 593 U.S. 255 [the United States Supreme Court's decision striking down Louisiana's

16

nonunanimous jury verdict law is not retroactive to final judgments because it is a new procedural rule].) In contrast, in California, a new procedural rule may nevertheless be retroactive under *In re Johnson* (1970) 3 Cal.3d 404 (*Johnson*), a case in which this court recited three factors the United States Supreme Court had previously instructed courts to consider in determining whether a new rule applies retroactively to cases predating the announcement of the rule: " ' "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." ' " (*Id*. at p. 410; *In re Lopez* (2016) 246 Cal.App.4th 350, 359, fn. 2 ["California Supreme Court has articulated a different three-part test for determining retroactivity of judicial opinions involving questions of procedure"].)

Consequently, we consider whether *Stevens* established a substantive or a procedural rule. A rule is substantive if it alters the range of conduct or the class of persons that the law punished. (*Milton*, *supra*, 13 Cal.5th at p. 907.) In comparison, procedural rules regulate only the manner of determining the defendant's culpability. (*Id*. at p. 908.) Thus, a new procedural rule alters the range of permissible methods for determining whether a defendant's conduct is punishable. (*Ibid*.) As such, they " ' merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.' " (*Welch v. United States* (2016) 578 U.S. 120, 129.) In applying these principles in the MDO context, we simply substitute "defendant's qualification for commitment" for "defendant's culpability" and "committed" for "convicted."

Examples of case creating procedural rules include *Crawford v. Washington* (2004) 541 U.S. 36, which changed the procedure for determining whether the admission of hearsay statements violated the confrontation clause. (*Milton*, *supra*, 13 Cal.5th at p. 908.) Similarly, in *People v. Sanchez, supra,* 63 Cal.4th 665, the court held that an expert

17

witness's out-of-court testimonial statements about case-specific facts violates the confrontation clause. The *Sanchez* rule is procedural, not substantive. (*Milton*, at p. 909.)

We conclude *Stevens* established a procedural rule by altering the permissible methods for determining a prisoner qualified as an MDO—that is, by establishing a rule regarding the use of hearsay and opinions of mental health professionals to prove whether a commitment offense involved the use of force or violence for purposes of section 2962, subdivision (e)(2)(P). Because *Stevens* established a procedural rule, it is not retroactive under the federal test.

Next, we consider whether *Stevens* is retroactive under the three-factor test set forth in *Johnson*, *supra*, 3 Cal.3d at page 410. Of those factors, "[t]he first factor—the purpose of the new rule—is the critical factor in determining retroactivity." (*Milton*, *supra*, 13 Cal.5th at p. 912.) If the purpose of a rule is to promote the basic fairness of the proceeding trial and the integrity of the factfinding process, it is more likely to be given retroactive effect. (*Ibid*.) The cases reflect "that reliability was a core concern." (*Id.* at p. 913.) For example, a rule providing defendants with the right to counsel at a lineup was not given retroactive effect because the absence of a defense attorney does not make the lineup unfair per se. (*Ibid*.)

These principles lead us to consider the cases discussing the reliability of probation reports. In the context of sentencing, the California Supreme Court has stated that a probation report "has inherent reliability because it was made pursuant to a court order by expert, objective government personnel in pursuit of their official duties." (*People v. Arbuckle* (1978) 22 Cal.3d 749, 755; accord, *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1096–1097 [statements in court-ordered probation report were "sufficiently reliable hearsay to be admissible" in eligibility hearing under Proposition 47].) In *Stevens*, the high court confirmed that in California felony proceedings, a

18

probation report is required and must be read by the sentencing judge, and it cannot be inferred that the Legislature required judges to read and consider unreliable documents. (*Stevens*, *supra*, 62 Cal.4th at p. 335.)  The SVP Act also supports the inference that the Legislature had determined probation reports were reliable in 2005 when Grinder was certified as an MDO.  That statute was in effect in 2005 and allowed the details of predicate sexual offenses to be proven by "documentary evidence," including "probation and sentencing reports."  (Welf. & Inst. Code, § 6600, subd. (a)(3); see Stats. 1996, ch. 462, § 4, p. 2818.)  Lastly, the Legislature has provided further confirmation that probation reports are reliable in the context of the MDO Act by amending the statute after *Stevens* to add the current subdivision (f) to section 2962, which authorizes the use of probation and sentencing reports to prove the "details underlying the commission of the offense that led to the conviction, including the use of force or violence."

Based on the foregoing cases and legislation, we conclude promoting basic fairness and concerns about the unreliability of probation reports was not the reason for the *Stevens* rule.  As a result, our examination of the *Johnson* factors leads us to conclude that the *Stevens* rule is not retroactive in the context of collateral review of an MDO certification.

To summarize, when compared to the law existing when Grinder was certified as an MDO, *Stevens* established a new procedural rule.  Under either the federal or state test, we will not retroactively apply the *Stevens* rule in a collateral review proceeding.

C.    <u>Sufficiency of the Evidence</u>

Here, we consider whether the evidence in the record is sufficient to establish Grinder committed a qualifying offense involving the "use of force or violence." (§ 2962, subd. (e)(2)(P).)  This analysis starts with the simple question whether a February 2003 probation report exists.  This question is resolved by the confidential portion of the clerk's transcript filed in case No. F084612, which contains the nine-page

19

probation report (without attachments) bearing a stamp indicating it was filed with the superior court on February 5, 2003.

The second question is whether the probation report contains sufficient case-specific details for support a finding that Grinder used "force or violence" when he committed the oral copulation offense in September 2001. (§ 2962, subd. (e)(2)(P).) Another way of phrasing this question is whether the medical health professionals, the Board, and the trial court that held a hearing on the petition for habeas corpus misconstrued the probation report when they concluded sufficient details were provided.

The probation report contains a section labeled "Circumstances of the Offense" and sets forth information taken from a Fresno County Police Department report. It describes a September 2001 incident at a drive-in where Grinder forced a victim to orally copulate him. We need not set forth more specific details here. Because the parties have access to the probation report, it is enough for us to state that we have reviewed the probation report and can say with confidence that lines 15 through 18 of its third page describe the use of force to commit the offense of oral copulation. (See Cal. Const., art. VI, § 14 [appellate court's responsibility is to provide a decision "in writing with reasons stated"].) Therefore, we reject Grinder's the challenge to the sufficiency of the evidence presented in this habeas corpus proceeding.

III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Grinder's petition asserts that, to the extent his claim was waived, forfeited, or can be deemed moot due to a failure to raise the claim at the time of his 2005 commitment or during any of his recommitment proceedings, he received ineffective assistance of counsel. His reply to the People's written return argues that, at the time of the initial commitment hearing in 2005, "there was no statutory mechanism in effect permitting the use of probation reports to establish element outside the scope of the plea. Despite the fact that [Grinder] was certified in a manner contrary to the existing statutory framework,

20

there was no challenge by counsel.  Any such claim would likely have succeeded as evidence by the decision in *Stevens*."

A.    Legal Principles

The Sixth Amendment right to effective assistance of counsel attaches to civil commitment proceedings such as those conducted under the MDO Act.  (*People v. Bona* (2017) 15 Cal.App.5th 511, 517–522.)  A defendant asserting a claim of ineffective assistance of counsel has the burden of showing (1) his counsel's performance fell below an objective standard of reasonableness and (2) prejudice, that is, but for counsel's unprofessional error a different result would have been reasonably probable.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687−688, 694 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216−218.)  A reviewing court uses an objective standard of reasonableness under prevailing norms based upon facts, not speculation, that counsel rendered ineffective assistance.  (*Strickland*, *supra*, at pp. 687–688, 693–694; *People v. Williams* (1988) 44 Cal.3d 883, 933 ["[a] factual basis, not speculation, must be established before reversal of a judgment may be had on grounds of ineffective assistance of counsel"].)

" 'Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  [Citation.]  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

21

overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " (*In re Valdez* (2010) 49 Cal.4th 715, 729−730.)

B.    2005 Assistance of Counsel

We begin our analysis of the effectiveness of Grinder's counsel by considering the failure in 2005 to challenge the use of hearsay statements in the probation report to establish Grinder qualified as an MDO under section 2962, subdivision (e)(2)(P).  These challenges could have been made at the hearing before the Board or, if a superior court hearing had been requested, in that court proceeding.  (See § 2966, subds. (a), (b) [two-tiered process for challenging an MDO certification].)  Consequently, the question presented is whether counsel's failure to raise the objection at the Board hearing and the subsequent failure to request of superior court hearing so the objection could be raised in court "fell below an objective standard of reasonableness." (*Strickland*, *supra*, 466 U.S. at p. 688.)

Part II.A. of this opinion describes the state of the case law at the time of Grinder's 2005 commitment.  Counsel's failure to object to the mental health professional's opinion testimony on hearsay or other grounds was not objectively unreasonable at the time because, under the *Miller-Valdez-Martin* line of cases, any such objection would have been overruled.  In March 2005, the Second District confirmed its previous holdings "that a qualified mental health professional may render an opinion on the force or violence criterion and may rely on the probation report from the underlying case in formulating that opinion." (*Martin*, *supra*, 127 Cal.App.4th at p. 976.)  Consequently, we reject Grinder's argument that *Stevens* demonstrates the omitted objections would likely have succeeded.

Furthermore, to the extent Grinder implies his counsel acted unreasonably by failing to anticipate the new procedural rule adopted in *Stevens*, we reject that implied argument.  First, in June 2005, the Supreme Court denied review in *Martin*, *supra*, 127

22

Cal.App.4th 970. Thus, an attorney would reasonably infer in 2005 that it was highly unlikely the California Supreme Court would grant review *and* disagree with the *Miller-Valdez-Martin* line of cases. Indeed, the Supreme Court granted review of the issue only after the 2012 *Baker* decision created a split in authority among the California Courts of Appeal. (See *Stevens*, *supra*, 62 Cal.4th at p. 335.)

Second, as a general rule, a failure to anticipate changes in the law is not considered ineffective assistance of counsel. (*People v. Harris* (2013) 57 Cal.4th 804, 840 [defense counsel's failure to raise a confrontation clause objection was excusable because it was not reasonable to expect counsel to anticipate *Crawford*]; *People v. Pearson* (2013) 56 Cal.4th 393, 461–462; *Alcorn v. Smith* (6th Cir. 1986) 781 F.2d 58, 62 ["nonegregious errors such as failure to perceive or anticipate a change in the law ... generally cannot be considered ineffective assistance of counsel"].)

Consequently, we conclude the assistance of counsel received by Grinder in 2005 did not fall below an objective standard of reasonableness. As a result, we do not reach the second element of prejudice.

### C. Assistance of Counsel at the Recommitment Hearings

In *Stevens*, the Supreme Court "conclude[d] that in a commitment hearing under the MDO Act, the People may not prove the facts underlying the commitment offense (that are necessary to establish the qualifying offense) through a mental health expert's opinion testimony." (*Stevens, supra,* 62 Cal.4th at p. 339.) Grinder's reply to the People's return argued that, after *Stevens* was decided in 2015, defense counsel should have, but did not, raise *Stevens* at any of Grinder's recommitment hearings.

We reject this argument because of the timeliness rule established in *Lopez* (see pt. I., *ante*) and our earlier conclusion that the new procedural rule established by *Stevens* does not apply retroactively to the 2005 commitment decision (see pt. II.B., *ante*). Consequently, there is not a reasonable probability that Grinder would have obtained a

better result if a *Stevens*-based challenge had been raised during any of his recommitment hearings.  (*Strickland*, *supra*, 466 U.S. at pp. 687–688, 693–694 [prejudice prong of an ineffective assistance of counsel claim]; *People v. Avena* (1996) 13 Cal.4th 394, 418.)

## DISPOSITION

The petition for writ of habeas corpus is denied.


FRANSON, J.


**WE CONCUR:**


LEVY, ACTING P. J.


SNAUFFER, J.